563 So.2d 172 (1990)
Arturo SECADA and King Cole Meat Products, Appellants,
v.
Janice WEINSTEIN, Appellee.
No. 89-2997.
District Court of Appeal of Florida, Third District.
June 12, 1990.
Adams, Hunter, Angones, Adams, Adams & McClure and Christopher Lynch, Miami, for appellants.
Joe N. Unger, Brumer, Cohen, Logan, Kandell & Kaufman, Miami, for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
The sole issue at the trial of this automobile accident personal injury case was whether the plaintiff had crossed the no fault threshold by establishing that she had sustained a permanent injury. The jury found that she had and awarded her $20,000. We reverse for a new trial because of the erroneous admission of evidence that previous juries in other cases had rejected the testimony of one of the defense expert physicians  similar to that in this case  that no permanency had been sustained.
In its broad outline, the trial followed the usual battle-of-experts-pattern which is an almost invariable feature of cases like this. The plaintiff presented an orthopedist and a neurosurgeon who each testified to permanency; *173 the defense presented equivalent specialists to the contrary. The unusual, and reversible, aspect of the case arose during the cross-examination of the defendants' orthopedic surgeon, Dr. Ledford Gregory. After the trial judge, preferring to await the actual questions propounded during cross, declined directly to rule on a motion to preclude the proposed line of inquiry, Ms. Weinstein's counsel referred by name and court location to many previous cases in which Dr. Gregory had likewise testified that those plaintiffs had sustained no permanent injury. She then proceeded, over specific objection, to state  in the form of questions which so indicated  that each of these cases had resulted in a verdict for the plaintiff and thus a rejection of Dr. Gregory's testimony.[1] Telling this to the jury requires a new trial.
While the fact that Dr. Gregory consistently and repeatedly testified to the same effect in previous cases, even specifically designated ones, was a perfectly proper subject of cross-examination to demonstrate his alleged bias and prejudice, 24 Fla.Jur.2d Evidence and Witnesses § 673 (1981); Wilson v. Stilwill, 411 Mich. 587, 599-603, 309 N.W.2d 898, 902-03 (1981), the same may emphatically not be said as to the results of those trials. As a, pardon the expression, threshold matter, this subject would improperly permit inquiry into a whole range of issues  concerning not only the particular facts of each of the cases about which Dr. Gregory was asked  but also the presumably many cases in which the jury found no permanency and thus agreed with him, as well as a similar point-counter-point concerning each of the previous cases in which the other experts, including the plaintiff's, had testified. The introduction of thoroughly collateral questions like these is impermissible. See Atlantic Coast Line R.R. v. Campbell, 104 Fla. 274, 139 So. 886 (1932).
Far more important, however, is the fact that any information as to prior verdicts has the inevitable tendency of causing the jury in the present case to defer to decisions made in a previous one and thus to delegate the uniquely non-delegable duty of reaching its own independent conclusions. Thus, a whole series of cases has found reversible error in the admission of evidence that a previous "fact finder"  whether an investigating police officer, a traffic court, or a jury in a previous trial in the same case  reached a conclusion on an issue in the present trial. See Eggers v. *174 Phillips Hardware Co., 88 So.2d 507 (Fla. 1956) (error to admit testimony of accident investigating officers that no arrest made for violation of traffic ordinances); Moore v. Taylor Concrete Co. & Supply Co., 553 So.2d 787 (Fla. 1st DCA 1989) (error to overrule objection to recross examination implying trooper's failure to issue traffic citation); Albertson v. Stark, 294 So.2d 698 (Fla. 4th DCA 1974) (improper for defense counsel to state to jury that defendant had not been charged with traffic violation), dismissed, 299 So.2d 602 (Fla. 1974); Murphy's Executor v. Hoagland, 32 Ky.L.Rptr. 839, 107 S.W. 303 (1908), aff'd sub nom. Murphy's Executor v. Murphy, 146 Ky. 396, 142 S.W. 1018 (1912) (error to allow questions on cross-examination as to how many jurors voted to break a will at former trial of same case); Garris v. McClain, 399 Pa. 261, 160 A.2d 398 (1960) (error on cross-examination to allow reference to defendant as "losing party" at his former trial); Guarnier v. American Dredging Co., 145 A.D.2d 341, 535 N.Y.S.2d 705 (1988) (error for trial court to advise jury of plaintiff's favorable verdict at prior trial); see also People v. Medina, 185 Colo. 101, 521 P.2d 1257 (1974) (trial judge correct in not permitting prosecution to introduce evidence of previous verdict of sanity). See generally 75 Am.Jur.2d Trial § 272 (1974); Annot., Propriety and Prejudicial Effect of Reference by Counsel in Civil Case to Result of Former Trial of Same Case, or Amount or Verdict Therein, 15 A.L.R.3d 1101 (1967). These authorities have particular application here. See also Ryan v. Blakey, 71 Ill. App.3d 339, 361, 27 Ill.Dec. 540, 551-52, 389 N.E.2d 604, 615-16 (1979) (cross-examination of defendant's expert as to other cases in which he was to testify regarding theories of recovery and amounts sued for prejudicial and irrelevant).
We find no merit to the appellees' claims that this error was not properly preserved,[2]Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982); Paris v. Bartfield, 160 Fla. 87, 33 So.2d 713 (1948), and that it was harmless. Accordingly, the judgment is reversed and the cause remanded for a new trial.
Reversed and remanded.
NOTES
[1] This course of conduct and the objections raised by defense counsel are epitomized in the following colloquy:

[By plaintiff's counsel]
Q. How about the case of Marshall tried in front of Judge Feder in 1985, where you also testified that the plaintiff had no permanent injury?
A. No.
Q. Then in that case the jury found for the plaintiff. I can't ...
A. Mr. HARRINGTON [defense counsel]:
I want to renew my objection. What other jurors have done is irrelevant.
THE COURT:
I understand. He's answered the questions to the best of his ability. That's all he can do.
THE COURT: Go ahead.
Q. Do you recall, sir, the case of Fardalitz, also tried in Dade County in front of Judge Fredricka Smith where you testified for the defendant that the plaintiff had no permanent disability?
A. No.
Q. Again, there was verdict for the plaintiff?
MR. HARRINGTON:
I object to an attorney testifying. It's irrelevant.
THE COURT:
The jury understands that they are here to try this case. Go ahead.
Other similar examples of the line of inquiry are as follows:
Q. Let me ask you this, Doctor, do you remember a case called Adderly that was tried in Dade County Courthouse in front of Judge Goderich in 1985 in which you testified that that plaintiff had no disability?
A. No, ma'am, I don't.
Q. You don't recall that case?
A. No.
Q. You don't recall that in that case the jury rendered a verdict for the plaintiff?
A. Ma'am I answered your question. I do not recall that case.
Q. How about the case, the Peash case in Dade County in front of Judge Phillip Knight that you testified the plaintiff had no disability. Does that ring a bell?
A. Ma'am I can't remember things four years ago.
Q. You don't recall the jury finding for the plaintiff in this case?
A. No.
[2] See supra note 1.