569 So.2d 425 (1990)
Alberto FARINAS, Appellant,
v.
STATE of Florida, Appellee.
No. 70361.
Supreme Court of Florida.
October 11, 1990.
*427 William A. Cain, Sp. Asst. Public Defender, North Miami Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark S. Dunn, Asst. Atty. Gen., Miami, for appellee.
EHRLICH, Justice.
Alberto Farinas appeals his conviction of first-degree murder and sentence of death. He also appeals his convictions of armed burglary and armed kidnapping, and sentences imposed thereon. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the conviction of first-degree murder, but find the sentence should be reduced to life imprisonment without eligibility for parole for twenty-five years. We vacate the sentence of death. We also affirm the convictions and sentences imposed for armed kidnapping and armed burglary.
Testimony at trial established that the appellant, Farinas, had previously lived with the victim, Elsidia Landin, for approximately two years but they were not married. During this time, the couple had a child. Two months before the victim was killed, she left Farinas and moved into her parents' home, taking the child with her. On November 25, 1985, the victim and her sister drove their father to work. Farinas was waiting outside the home and followed the car. Farinas continued to follow the car after the two women dropped their father off at work and tried several times to force the victim's car off the road, finally succeeding in stopping her vehicle. Farinas then approached the victim's car and expressed anger at the victim for reporting to the police that he was harrassing her and her family.
When the victim's sister urged her to drive away, Farinas leaned into the vehicle and removed the keys from the ignition, ordered the victim out of the vehicle, and guided her by the arm to his car. After returning the keys to the victim's sister, Farinas drove away with the victim in his car despite the pleas of the victim and her sister. When Farinas stopped the car at a stoplight near the Palmetto Expressway, the victim jumped out of the car and ran, screaming and waving her arms for help. Farinas also jumped from the car and fired a shot from his pistol which hit the victim in the lower middle back. According to the medical examiner, this injury caused instant paralysis from the waist down. Farinas then approached the victim as she lay face down and, after unjamming his gun three times, fired two shots into the back of her head.
Farinas was charged with first-degree murder, armed burglary, and kidnapping with a firearm. He pleaded not guilty by reason of insanity. The jury found Farinas guilty on all three counts charged in the indictment and recommended the death penalty. In sentencing Farinas to death, the trial judge found the following aggravating circumstances to be applicable: (1) the capital felony was committed while the defendant was engaged in the commission *428 of kidnapping[1]; (2) the capital felony was especially heinous, atrocious, or cruel[2]; and (3) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[3] In regard to mitigation, the trial court found that while Farinas was under the influence of a mental or emotional disturbance,[4] it was not of such a nature or degree as to be considered extreme. The trial court also found that although Farinas' capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law was impaired,[5] the impairment was not of such a nature or degree as to be considered total or substantial. The trial court found that the evidence of these mitigating factors, considered alone or in conjunction with the other, were entitled to little weight and were outweighed by the aggravating factors. Farinas raises ten issues on appeal, of which only seven merit discussion.[6]

Preliminary Issue
Farinas first contends the trial court erred in denying a defense motion to suppress the murder weapon which was recovered by the police at the residence where Farinas was arrested. Farinas argues that the warrantless search was unreasonable and that the improper introduction of the weapon into evidence during his trial prejudiced him. We find it unnecessary, however, to determine whether the trial court erroneously denied the defense motion to suppress. Any error in admitting the weapon into evidence is clearly harmless. Farinas admitted committing the crime. Additionally, eye witnesses testified that they saw Farinas shoot the victim with a pistol. On the record before us, we can declare beyond a reasonable doubt that the admission of the weapon into evidence, even if erroneous, did not affect the jury verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).

Guilt Phase
We next address Farinas' argument that the trial court abused its discretion by denying a defense motion for mistrial based upon alleged improper cross-examination and impeachment of the key defense witness, Dr. Rothenberg. The first line of questioning now challenged by Farinas involved the following exchange between the prosecutor and Dr. Rothenberg on cross-examination:
Q. When did you work for them?
A. It was a seven year period from the early 50's to the late 60's.
Q. And, did there come a time when you terminated or you ceased your employment relationship with the City of Miami Beach?
A. Yes, sir. The City closed the office because they felt that there was other services that should be provided at a county-level rather than a municipal level so they did not include it in the next budget.
Q. Do you know whether or not the City of Miami Beach terminated you because the City of Miami Beach felt that you were ethically and purposely referring private patients to yourself after you had made contact with those patients as an employee of the City of Miami Beach?
A. No. That's absolutely not true and it couldn't have happened because the City of Miami Beach was servicing people who were not able to afford private fees and they had to be screened as *429 being eligible for public service because they only provided service for those and there was no way for me to refer those indigent people to anyone.
Q. So as far as you are concerned, you did nothing unethical in that instance?
A. I have never been unethical, sir.
The second line of questioning now challenged by Farinas occurred a few moments later. On redirect examination of Dr. Rothenberg, defense counsel twice inquired if the doctor knew whether Farinas had ever read the Diagnostic Statistical Manual of Disorders and was aware of "the sentences that are in there." The doctor replied "I don't know. I will be surprised if he did." During recross-examination, the prosecutor inquired as follows:
Q. Mr. Gonzalez has asked if he had read it and I would like to ask you also, Doctor, would you be surprised if he talked to individuals over in the jail already about possible defenses in this case?
A. No. I wouldn't be surprised.
Q. You wouldn't be surprised that he had talked about possible defenses 
At this point, defense counsel objected, asking that the trial court direct the prosecutor to stop making any further inquiry of this issue and stated that she had a motion for mistrial. The objection was overruled. After the conclusion of Dr. Rothenberg's testimony, defense counsel stated that there were two grounds for the motion for mistrial. One ground was "the innuendo concerning Dr. Rothenberg and Miami Beach." A second ground was the inference by the prosecutor that Farinas consulted with others in the jail as to possible defenses.
The trial court correctly denied the motion for mistrial. Evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. The only proper inquiry into a witness' character, for impeachment purposes, goes to reputation for truth and veracity. Hitchcock v. State, 413 So.2d 741, 744 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). See also §§ 90.608-90.610, Fla. Stat. (1985). In the present case, the line of questioning regarding unethical conduct on the part of the doctor while employed by the City of Miami Beach was improper impeachment of a witness, as the state concedes.
Absent fundamental error, an issue will not be considered for the first time on appeal. Clark v. State, 363 So.2d 331 (Fla. 1978). The improper impeachment of the witness complained about is not fundamental error. Because defense counsel in the present case failed to make a contemporaneous objection to this improper line of questioning impeaching the defense witness, the issue is not properly preserved for appeal. Davis v. State, 461 So.2d 67, 71 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). Farinas' reliance upon Fulton v. State, 335 So.2d 280 (Fla. 1976) is misplaced. In Fulton, defense counsel interposed immediate objections to improper questions by the prosecutor impeaching a defense witness.[7]
We also reject the argument that the trial court erred in overruling the objection and motion for mistrial based upon the prosecutor's inquiring whether Dr. Rothenberg would be surprised if Farinas had talked to individuals in jail about possible defenses. Defense counsel opened this area to inquiry on redirect by asking Dr. Rothenberg if he felt Farinas had read the Diagnostic Statistical Manual of Disorders. It was not outside the scope of redirect examination for the state to inquire whether the doctor thought it was possible that Farinas had acquired knowledge of possible defenses from sources other than the manual. Therefore, this line of questioning was permissible. § 90.612(2), Fla. Stat. (1985).
*430 In the final issue which we will address concerning the guilt phase of the trial, Farinas argues the trial court erred in entering judgment upon the verdicts of guilty of armed burglary and kidnapping while in possession of a firearm. Farinas was sentenced by the trial court to consecutive terms of life imprisonment for the offenses of armed burglary and armed kidnapping. §§ 775.087(1), 787.01, 810.02, Fla. Stat. (1985). In addition, the trial court imposed concurrent three-year mandatory minimum sentences before Farinas would be eligible for parole. § 775.087(2), Fla. Stat. (1985). Farinas contends that his two confessions, which were admitted into evidence, were the only evidence in the record that at the time of the commission of the burglary and kidnapping there was a weapon concealed in his waistband and the state therefore failed to establish the corpus delicti of the crimes independent of his confessions.
The state bears the burden of proving the corpus delicti before a defendant's confession may be admitted into evidence. "This Latin phrase means literally `the body of the crime.' It is regularly used in appellate decisions to mean the legal elements necessary to show that a crime was committed." State v. Allen, 335 So.2d 823, 824 n. 2 (Fla. 1976). As this Court has previously recognized, "[a] person's confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime." Id. at 825.
Although there must be independent proof of the corpus delicti to admit a confession, "`it is enough if the evidence tends to show that the crime was committed.' [Frazier v. State, 107 So.2d 16, 26 (Fla. 1958)]. Proof beyond a reasonable doubt is not mandatory." Bassett v. State, 449 So.2d 803, 807 (Fla. 1984). For first-degree murder, for example, the necessary elements to establish corpus delicti are: "(1) the fact of death, (2) the criminal agency of another person as the cause thereof, and (3) the identity of the victim." Bassett, 449 So.2d at 807.
The offense of burglary is defined as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1985). Other than Farinas' confessions, the testimony of the victim's sister was presented at trial. She testified that Farinas leaned into the car and removed the key from the ignition. He then ordered the victim out of the car, grabbed her by the arm, and guided her to his car. At this point, the crime of burglary was completed. We reject appellant's argument and conclude that this independent evidence was clearly more than adequate to establish the corpus delicti of burglary for the introduction of a confession. Although there was no mention in the witness' testimony that Farinas had a firearm in his possession during the burglary, possession of a firearm during commission of the burglary relates to the degree of the offense. See § 810.02(2), Fla. Stat. (1985). It was therefore not necessary to independently establish this element in order to admit his confessions. Farinas could properly be convicted of and sentenced for armed burglary.
We also reject Farinas' argument that the trial court erred in entering judgment and imposing sentence upon the conviction of kidnapping while in possession of a firearm. At the point in time that the victim escaped from the car and Farinas went after her, the kidnapping was still in progress. The state produced witnesses at trial who testified that they saw Farinas in possession of a handgun as he chased the victim. Accordingly, there was independent evidence, apart from Farinas' confessions, that he was in possession of a firearm during the kidnapping. We affirm his conviction for kidnapping while in possession of a firearm and the sentence imposed thereon.

Penalty Phase
In regard to the imposition of the death penalty, Farinas challenges the trial court's findings regarding two of the three aggravating *431 circumstances determined to be applicable. He also contests the trial court's rejection of mitigating evidence and contends the death penalty is not proportionately warranted for this crime.
Farinas first argues that the trial court erred in determining that the murder was heinous, atrocious, or cruel. We disagree. Evidence introduced at trial established that Farinas ignored the victim's pleas for mercy. The fact that the victim jumped from the car and ran from Farinas while screaming for help indicates that the victim was in frenzied fear for her life. As noted by the trial court, after Farinas paralyzed the victim from the waist down with a gunshot through her spine, he approached her and fired two shots into the back of her head after unjamming the gun three times. The victim was fully conscious during the time he unjammed the gun and was aware of her impending demise from the defendant. The record amply supports this finding. See Harvey v. State, 529 So.2d 1083 (Fla. 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989); Ross v. State, 474 So.2d 1170 (Fla. 1985).
Farinas next contends the trial court erred in finding the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. In Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), we noted that "calculation" consists of "a careful plan or prearranged design." We also noted that the heightened premeditation described in the capital sentencing statute must bear the indicia of "calculation." We therefore reject the state's argument that because Farinas approached the victim after firing the first shot and then unjammed his gun three times before firing the fatal shots to the back of the victim's head afforded him time to contemplate his actions, thereby establishing heightened premeditation. The fact that Farinas had to unjam his gun three times before firing the fatal shots does not evidence a heightened premeditation bearing the indicia of a plan or prearranged design.[8] Because the state has failed to prove beyond a reasonable doubt that Farinas' actions were accomplished in a "calculated" manner, this aggravating factor is not applicable in the present case.
On review of the record, we conclude that there was evidence which tended to establish that the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance. § 921.141(6), Fla. Stat. (1985). During the two-month period after the victim moved out of Farinas' home, he continuously called or came to the home of the victim's parents where she was living and would become very upset when not allowed to speak with the victim. He was obsessed with the idea of having the victim return to live with him and was intensely jealous, suspecting that the victim was becoming romantically involved with another man. See Kampff v. State, 371 So.2d 1007 (Fla. 1979). We find it significant, also, that the record reflects that the murder was the result of a heated, domestic confrontation. Wilson v. State, 493 So.2d 1019 (Fla. 1986). Therefore, although we sustain the conviction for the first-degree murder of Elsidia Landin and recognize that the trial court properly found two aggravating circumstances to be applicable, we conclude that the death sentence is not proportionately warranted in this case. Wilson; Ross v. State, 474 So.2d 1170 (Fla. 1985).
Accordingly, the convictions and sentences for kidnapping while in possession of a firearm and armed burglary are affirmed. The conviction for first-degree *432 murder is affirmed but the death sentence is vacated with directions to impose a life sentence without eligibility for parole for twenty-five years. The case is remanded accordingly.
It is so ordered.
OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which SHAW, C.J., concurs.
GRIMES, Justice, concurring as to conviction but dissenting as to sentence.
I cannot agree that the evidence in this case was insufficient to prove that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. While the killing was no doubt prompted by Farinas' jealousy over his loss of Elsidia, it was nevertheless a planned crime. Farinas stalked Elsidia at her home and then followed her car when she left home with her sister and father. After the two women dropped their father off at work, Farinas stopped their automobile by pulling in front of them. He then grabbed Elsidia by the arm and made her get into his car. Elsidia pleaded with him not to kill her. When she jumped out of the car at a stop light, he chased her and shot her in the back. He then walked up to her as she lay immobilized and executed her by firing two shots into the back of her head, but not before his gun had jammed three times. He then escaped from Dade County to Tampa where he was ultimately arrested.
While Farinas contended that he did not intend to kill her until she ran, there was sufficient evidence for the judge to conclude that he had planned to do so all along. When he confronted the women after stopping their car, Farinas told Elsidia that her former husband, Gustavo, had told him that he was going to kill her and that he (Farinas) had told Gustavo that he would help him. Farinas then said: "Elsie, you know something, you are not going to live to be an old lady." Later, while they were in Farinas' car, he told her: "[B]ut from loving you so much before seeing you in the arms of another man, I kill you, you see?"
Furthermore, even if the finding of "cold, calculated, and premeditated" is eliminated, there remain two aggravating circumstances to be weighed against mitigation which the court deemed to be unsubstantial. The sentencing order stated that at a pretrial competency hearing in which psychiatric and psychological testimony was presented the court had concluded that Farinas was a malingerer who was not suffering from mental disease, defect, or infirmity that would render him incompetent to stand trial. The trial court concluded that even though Farinas was under the influence of a mental or emotional disturbance, it was not of such a nature or degree as to be considered extreme. The trial court further observed that "while the defendant was somewhat impaired in his ability to appreciate the criminality of his conduct, and his ability to conform his conduct to the requirements of the law was impaired, the defendant's lack of appreciation of the criminality of his conduct and his inability to conform his conduct to the requirements of the law was not of such a nature or degree as to be considered total or substantial." While the evidence was conflicting with respect to whether Farinas' mental condition was more serious than as characterized by the trial court, in our bifurcated procedure of death penalty sentencing, the trial court is necessarily the finder of fact.
The jury recommended death by a nine-to-three vote. Because this was not a jury override, the principles of Tedder v. State, 322 So.2d 908 (Fla. 1975), are inapplicable. The evidence in this record supports the trial court's judgment of death, and this killing should not be dismissed as just another crime of passion.
SHAW, C.J., concurs.
NOTES
[1] § 921.141(5)(d), Fla. Stat. (1985).
[2] § 921.141(5)(h), Fla. Stat. (1985).
[3] § 921.141(5)(i), Fla. Stat. (1985).
[4] § 921.141(6)(b), Fla. Stat. (1985).
[5] § 921.141(6)(f), Fla. Stat. (1985).
[6] We find Farinas' arguments that the trial court committed fundamental error by (1) admitting an allegedly prejudicial photograph, and (2) informing the jury prior to the penalty phase that an arrest warrant had been issued for a juror, who had deliberated with them in the guilt phase of the trial, due to his failure to appear for the penalty phase of the trial, to be without merit. Farinas' argument that the death penalty is cruel and unusual punishment has previously been addressed and rejected. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
[7] Moreover, during the discussion of the motion for mistrial at the bench, the trial court offered sua sponte to strike the evidence. This offer was declined by defense counsel. As this Court noted in Sullivan v. State, 303 So.2d 632, 635 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976): "It is well-established law that where the trial judge has extended counsel an opportunity to cure any error, and counsel fails to take advantage of the opportunity, such error, if any, was invited and will not warrant reversal."
[8] The state's reliance upon Phillips v. State, 476 So.2d 194 (Fla. 1985), is misplaced. In Phillips, this Court held that because appellant had to reload his revolver in order for all of the shots to be fired, he was afforded ample time to contemplate his actions and choose to kill his victim, and the record therefore amply supported the finding that the murder was cold, calculated, and premeditated. Our decision in Phillips, however, was predicated on Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). We receded from this portion of Herring in our decision in Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).