42 So.3d 293 (2010)
Alton ROOSEVELT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-2680.
District Court of Appeal of Florida, Third District.
August 4, 2010.
*295 Carlos J. Martinez, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Ansley B. Peacock, Assistant Attorney General, for appellee.
Before RAMIREZ, C.J., and COPE and GERSTEN, JJ.
COPE, J.
This is an appeal of a judgment which adjudicated Alton Roosevelt a sexually violent predator and committed him to the Florida Civil Commitment Center pursuant to the Jimmy Ryce Act. See §§ 394.910-.931, Fla. Stat. (2005). The main question on appeal is whether the trial court erred in allowing the State to impeach the defense expert witness, Dr. Natalie Brown, concerning three separate matters. For the reasons stated below, the judgment is reversed and the cause remanded for a new trial.
First, the State was allowed to cross-examine the expert concerning her testimony in a child custody case in the mid-1990's in the State of Washington where the judge found the expert's testimony not credible. The expert had been appointed as a guardian ad litem in a contested custody case involving four children. She opined that the children should go to the mother. The judge found the expert's testimony not credible because the court determined that the expert had ignored testimony that the mother had physically abused the children.[1]
In Mr. Roosevelt's trial, the State was allowed to question the expert concerning this matter at length. The defense objections were overruled. The impeachment testimony regarding the State of Washington case covered seven pages of the transcript. The State suggested that since the Washington court had found her testimony in the child custody case to be not credible, that fact was proper impeachment evidence in Mr. Roosevelt's case. We disagree.
The State contended that this was permissible because a party "may attack the credibility of a witness by . . . (2) Showing that the witness is biased." § 90.608(2), Fla. Stat. (2008). We are unable to see any plausible argument that service as a court appointed guardian ad litem for four children approximately thirteen years previously demonstrates bias on the part of the expert in a Jimmy Ryce Act proceeding tried in 2008.
The Florida Supreme Court has addressed this issue in a comparable context. In Cruse v. State, 588 So.2d 983 (Fla.1991), the defendant in a capital case had been denied the opportunity to cross-examine a State medical expert about the fact that in another capital case ten years previously, a trial judge found that the expert had rendered an incompetent medical evaluation. Id. at 988. The Court held that the proposed cross-examination was correctly prohibited, as it was "a purely collateral matter, the probative value of which was outweighed by the danger of confusing the issues and the jury." Id. The Court went on to say:
The defense's proposed evidence does not fall under any of the express ways allowed to attack a witness's credibility-it does not deal with a prior inconsistent statement, bias, character or ability to *296 observe, remember, or recount. See § 90.608, Fla.Stat. (1987). Cruse was attempting to introduce evidence of an arguably inadequate evaluation by an expert over ten years before he ever conducted an evaluation in this case. If this were permitted, the State could then have introduced evidence that the Sireci evaluation was not inadequate and may even have gone on to introduce evidence of prior competent evaluations performed by Kirkland. If such inquiry were permissible, every trial involving expert testimony could quickly turn into a battle over the merits of prior opinions by those experts in previous cases, malpractice suits filed against them, and Department of Professional Regulation allegations.
The adequacy of Dr. Kirkland's evaluation of a criminal defendant over ten years earlier was not a relevant issue for the jury's consideration.
Id. (emphasis added).
This court has addressed the issue in a civil context in Secada v. Weinstein, 563 So.2d 172 (Fla. 3d DCA 1990). There the plaintiff cross-examined the defense expert by asking (a) whether he had, in specifically named personal injury cases, rendered opinions that the plaintiffs suffered no permanent injury, and (b) whether in each named case, the jury found for the plaintiff, thus rejecting the expert's testimony. This court said:
While the fact that Dr. Gregory consistently and repeatedly testified to the same effect in previous cases, even specifically designated ones, was a perfectly proper subject of cross-examination to demonstrate his alleged bias and prejudice, the same may emphatically not be said as to the results of those trials. As a, pardon the expression, threshold matter, this subject would improperly permit inquiry into a whole range of issues-concerning not only the particular facts of each of the cases about which Dr. Gregory was asked-but also the presumably many cases in which the jury found no permanency and thus agreed with him, as well as a similar point-counter-point concerning each of the previous cases in which the other experts, including the plaintiff's, had testified. The introduction of thoroughly collateral questions like these is impermissible.
Far more important, however, is the fact that any information as to prior verdicts has the inevitable tendency of causing the jury in the present case to defer to decisions made in a previous one and thus to delegate the uniquely non-delegable duty of reaching its own independent conclusions.
Id. at 173 (citations omitted). The trial court should have sustained defense objections to the cross-examination regarding the prior case in the State of Washington.
Second, the State was allowed to question the expert concerning $18,000 she paid in back payroll taxes to the IRS in the late 1980's in relation to a for-profit hospital she and a business partner operated. There was a lawsuit between the partners. The trial court found her testimony not credible regarding a portion of the payroll taxes that had not been paid. This IRS-related cross-examination consumed three pages of transcript. The State argued that this cross-examination was a permissible inquiry into bias. We disagree. Again, this evidence concerned a purely collateral matter and admitting the evidence was error. See Cruse, 588 So.2d at 988; Secada, 563 So.2d at 173.
We reach a different conclusion regarding the third segment of cross-examination. The State cross-examined the expert about an email she sent while serving as a defense expert several years ago in a Florida *297 criminal case. The email was addressed to defense counsel and stated "Joe is in remission and has been for several years. He doesn't need to be Baker Acted unless it will help his case. (I expect the Baker Act facility to discharge him fairly quickly as there are not current symptoms or psychosis.)." The State argued this testimony showed the expert's willingness to tailor her testimony to favor the party who had retained her and is therefore admissible.
This cross-examination question is similar to that which was allowed in Tanzi v. State, 964 So.2d 106, 115-16 (Fla.2007). In Tanzi, the Florida Supreme Court said:
Tanzi asserts that the trial court abused its discretion when it permitted the State to impeach the character of Dr. Vicary, a defense mental health expert, with a specific and unrelated act of misconduct. More specifically, the trial court allowed the prosecution to question Dr. Vicary regarding a 1998 suspension of his California medical license due to his involvement in the case of Eric Menendez as both a treating physician and a forensic scientist. At the direction of Menendez's attorney, Dr. Vicary had rewritten his notes and deleted passages that were damaging to the defense.
A trial court's admission of evidence will not be disturbed on appeal absent a clear abuse of discretion. Brooks, 918 So.2d at 188; see also Morrison v. State, 818 So.2d 432, 448 (Fla.2002) ("[T]he decision as to whether a particular question properly goes to interest, bias, or prejudice lies within the discretion of the trial judge.") (quoting Charles W. Ehrhardt, Florida Evidence § 608.5 (1997 ed.)). While impeachment of a witness's character by specific acts of misconduct is prohibited, Fernandez v. State, 730 So.2d 277, 282 (Fla.1999); Farinas v. State, 569 So.2d 425, 429 (Fla.1990), "[o]ur evidence code liberally permits the introduction of evidence to show the bias or motive of a witness." Gibson v. State, 661 So.2d 288, 291 (Fla.1995). "Included within the types of matters that demonstrate bias are those that relate to the interest of the witness, favoritism, and corruption." Morrison, 818 So.2d at 447 (alteration in original) (quoting Ehrhardt, supra § 608.5).
Dr. Vicary's willingness to forge his interview notes at the request of a defense attorney could illustrate Dr. Vicary's corruption as a mental health expert. Therefore, because this line of impeachment could properly relate to the witness's bias, we find that the trial court did not abuse its discretion in permitting it.
Tanzi, 964 So.2d at 115-16.[2] As in Tanzi, we conclude that the trial court here had the discretion to allow this particular cross-examination question.[3]
As an alternative argument, the State contends that even if the impeachment evidence was improperly admitted, it constituted harmless error. We disagree. The error was not harmless beyond a reasonable doubt. See Pesci v. State, 963 So.2d 780, 788 (Fla. 3d DCA 2007) (applying the "harmless beyond a reasonable doubt" standard in a proceeding pursuant *298 to the Jimmy Ryce Act); Hoo v. State, 969 So.2d 411, 412 (Fla. 3d DCA 2007).
Finally, we address the defendant's claim that he was entitled to a directed verdict. The defendant moved for a directed verdict at the close of the State's case in chief, but failed to renew the motion at the close of all of the evidence. He also failed to serve a timely post-verdict "motion to set aside the verdict and any judgment entered therein and to enter judgment in accordance with the motion for directed verdict." Fla. R. Civ. P. 1.480(b). In order to preserve the point for appellate review, it was necessary that the defendant renew the motion at the conclusion of the case and make the appropriate post-trial motion. See Industrial Affiliates, Ltd. v. Testa, 770 So.2d 202, 204 (Fla. 3d DCA 2000). Having failed to preserve the matter for review, the defendant's claim for a directed verdict fails. This ruling is without prejudice to the defendant to seek a directed verdict at the new trial in accordance with proper procedure.
For the reasons stated, the judgment is reversed and the cause remanded for a new trial.
RAMIREZ, C.J. (concurring).
I concur in the majority opinion except as to the use of the e-mail in cross-examination. The prosecutor was allowed to cross-examine Dr. Brown with an e-mail Dr. Brown sent to a defense attorney in Orlando several years ago. The e-mail did not involve a Jimmy Ryce Act proceeding. The matter was clearly collateral to this case, yet the prosecution was allowed to question the doctor on this matter ostensibly to show interest, bias, or prejudice. Although I realize that "a decision as to whether a particular question properly goes to interest, bias, or prejudice lies within the discretion of the trial judge," Morrison v. State, 818 So.2d 432, 448 (Fla. 2002), I believe on retrial, the prosecution should not be allowed to use this e-mail on cross-examination.
Impeachment of a witness's character by specific acts of misconduct is prohibited. See §§ 90.608, 609, 610, Fla. Stat. (2007). See also Fernandez v. State, 730 So.2d 277, 282 (Fla.1999); Farinas v. State, 569 So.2d 425, 429 (Fla.1990). In a case indistinguishable from our situation, the Second District, in an en banc opinion, held that "counsel may not make inquiries on cross-examination about unethical conduct on the part of expert witnesses, or disciplinary actions in their profession." In re: Commitment of DeBolt, 19 So.3d 335, 337 (Fla. 2d DCA 2009). In that case, the State sought to have DeBolt civilly committed as a sexually violent predator pursuant to the Jimmy Ryce Act. Id. at 336-37. During cross-examination of one of DeBolt's expert witnesses at the civil commitment trial, the State was permitted to ask questions regarding the expert's previous disciplinary proceedings, which had nothing to do with the expert's work in Florida in Jimmy Ryce cases. Id. at 337. Thereafter, DeBolt was committed. Id. DeBolt appealed, alleging that the trial court erred in permitting the State to attack the credibility of DeBolt's witness regarding a past disciplinary matter. Id. The Second District agreed, stating that the trial court abused its discretion when it allowed the questioning regarding the expert's formal disciplinary proceedings:
Section 90.609, Florida Statutes (2006), provides that the character of a witness may be attacked only by reputation evidence that refers to character relating to truthfulness. Under section 90.610, a witness's ability can only be impeached by convictions of crimes involving false statements or dishonesty. Thus, evidence regarding particular acts *299 of misconduct may not be introduced for purposes of impeaching a witness's credibility.
Id. (citations omitted).
Our case is even stronger than DeBolt because the e-mail never resulted in disciplinary proceedings. Under the analysis set forth in DeBolt, the prosecutor here should not be permitted to use the e-mail to discredit Dr. Brown. Even if Dr. Brown had been found guilty of unethical conduct for writing the e-mail, under DeBolt, the prosecution would not be allowed to cross-examine the witness for such a particular act of misconduct.
The majority seems to rely on an exception to this impeachment rule because it demonstrates a bias by the witness. Tanzi v. State, 964 So.2d 106, 115 (Fla.2007). The e-mail in question involved a case about whether a young man should be Baker-Acted and involuntarily placed in a mental facility. It read as follows: "Joe is in remission and has been for several years. He doesn't need to be Baker Acted unless it will help his case. (I expect the Baker Act facility to discharge him fairly quickly as there are not current symptoms or psychosis.)" The e-mail does not say anything about testimony, much less tailoring testimony, yet that was precisely what the prosecutor was allowed to ask about. The transcript reads as follows:
Q. [by Ms. Isidron] And on at least one occasion, you've indicated a willingness to, sort of, tailor your testimony if that end result will be that it helps a defendant or a respondent in his case, correct?
A. [by Dr. Brown] No, I've never done that. And you're referring to an e-mail that I sent in Orlando, and it was not about my testimony regarding civil commitment issues, whether or not somebody met criteria because I was long on record with regard to this individual that he did not meet criteria.
It was whether or not he had an active Schizophrenic psychosis at the time. And so the question thatthere was lots of communication by telephone about whether or not this young man should be Baker Acted, put into a psychiatric institution if he was released at trial, his civil commitment trial.
And so the attorney asked me to research that issue and determine whether or not a Baker Act was appropriate, and this was the first time in this state that the issue had come up because it was a new issue for the civil commitment context. I indicated that the Baker Act facility, a psychiatric facility as the first step down from the civil commitment center might be helpful because it would beit would help clarify whether or not he actually had an active psychosis because it would be evaluated by a psychiatrist. And that's what that email was involving.
Q. Isn't it fact a fact you wrote, Joe is in remission and has been for several years. He doesn't need to be Baker Acted unless it will help his case. Then in parenthesis you wrote, I expect the Baker Act facility to discharge him fairly quickly as there are no current symptoms of psychosis?
A. That's right. And at that point I was on record for testifying for the defense. And it is appropriate, and it is common for evaluators to assist in release negotiations. Sometimes I have even assisted the State in release planning for a respondent. In fact, I have done that in Daytona Beach.
Q. Okay. Wait a minute. Are you trying to say to this jury that telling an attorney, [h]e doesn't need to be Baker Acted; but if it helps the case, I'll say he should be?
A. I wasn't talking about the civil commitment case. I was talking about his psychiatric case, his psychiatric condition *300 because it was not determined definitely at the civil commitment whether or not he still had an active psychosis even I felt he was in long term remission. So it was my opinion that it might help if a psychiatrist were to evaluate him in addition to a psychologist.
Q. Wait, wait. A Baker Act is when somebody is placed in a hospital against their will, right?
A. That's correct.
Q. And a Baker Act is when somebody is going to hurt themselves or presents a danger to hurt others, right?
A. Yes, but there's also an evaluation process.
Q. A Baker Act is something that goes against the person that's going to be Baker Acted, right?
A. Yes, that's true.
Q. And you indicated even if he was Baker Acted, he was going to be released by them because there was no evidence of psychosis?
A. That was my opinion, but I wantedI recommended that my opinion be followed up with a second opinion from a psychiatrist.
Q. Now, you say he couldn't see a psychiatrist unless he was Baker Acted?
A. No, he could not.
Q. Are you telling this jury that you suggested that a man be Baker Acted in orderif it would help the case because there was no psychiatrist that could see him unless he was Baker Acted?
A. At point in time there was no way for a private psychiatrist, no way to pay the psychiatrist, and no way to get a private psychiatrist into the civil commitment center to evaluate someone. It had never been done.
The majority approves this entire line of questioning, citing Tanzi 964 So.2d 106 (Fla.2007). In Tanzi, the prosecution was allowed to cross-examine the defense expert on the basis of misconduct that resulted in the suspension of the expert's medical license. His suspension was because, at the direction of defense counsel, the doctor had rewritten his notes and deleted passages that were damaging to the defense. Id. at 115-16. The Tanzi case thus involved a specific act of misconduct of a doctor forging his interview notes at the request of defense counsel leading to his suspension from the practice of medicine.
Here, unlike in Tanzi, we have an e-mail that forged nothing. No testimony was given, no prevarication was proven, and no discipline was contemplated. Yet the prosecution was allowed to cross-examine Dr. Brown extensively and argumentatively, misleading the jury to think that it showed she was willing to "tailor her testimony." I believe the doctor's explanation was perfectly reasonable, yet the prosecution here was allowed to confuse the jury with a series of questions about a civil commitment under the Baker Act, which is entirely different from a commitment of someone accused of being a sexually violent predator under the Jimmy Ryce Act. Accordingly, on retrial, I would not allow the prosecution to cross-examine Dr. Brown about the e-mail.
NOTES
[1] The expert testified that as guardian ad litem, she relied on information she had obtained from the children. She also stated that after she served as guardian ad litem in this particular case, the same State of Washington judge appointed her to be guardian ad litem in other cases.
[2] The concurrence relies on In re: Commitment of DeBolt, 19 So.3d 335 (Fla. 2d DCA 2009). That case, however, was decided under sections 90.609 and 90.610, Florida Statutes. Tanzi, on the other hand, was decided under section 90.608, Florida Statutes, which was the section involved here.
[3] The expert testified that the "case" being referred to is the psychological treatment case, not the criminal case. While the expert is free to give that explanation, the question is within the trial court's discretion to allow.