FORST, J.,
concurring specially.
I write separately solély on the issue of improper impeachment of Appellant Kareem Daniel Farrell’s expert witness. Dr. Lloyd, a biomechanist with the Department of Veterans’ Affairs," was called at trial to refute the State’s theory that the injuries to the victim were indicative of the child being shaken. In my view, the *1053 State’s questions about inconsistencies in prior versions of Dr. Lloyd’s curriculum vitae (CV) were improper. However, I join the majority opinion’s harmless error analysis and conclusion that any error' resulting from the state’s cross-examination was harmless.
Improper Questioning
Dr. Lloyd is part of a growing minority in the biomedical field who dispute the traditional acceptance of Shaken Baby Syndrome.[2] At trial, he testified that his experiments showed an adult human is physically incapable of shaking a child hard enough to create the acceleration necessary to damage the child’s brain. In addition to properly cross-examining Dr. Lloyd on the contents of his testimony, the State chose to go beyond the bounds of proper impeachment (see below) and questioned him about a position that appeared on prior versions of his CV, but was not listed in the most recent version. Specifically, Dr. Lloyd’s CV from October 2012 stated that he was a professor of medicine at the University of South Florida (USF). By January 2013, this CV entry now stated that his status as professor was “in process.” By March, any reference to being a professor at USF was removed entirely. Neither of the prior versions of the CV were offered into evidence or discussed during direct examination of Dr. Lloyd.
While Dr. Lloyd had a reasonable explanation for the changes in his CV, the questions were nonetheless improper. Under section 90.608, Florida Statutes (2013), parties can impeach a witness by: “1) introducing statements of the witness which are inconsistent with the witness’s present testimony; 2) showing that the witness is biased; '[or] 3) attacking the character of the witness in accordance with the provisions of sections *90.609 or 90.610.” If a party chooses to impeach by attacking the character of a witness, it must do so by admitting evidence in the form of reputation (under section 90.609) or conviction of certain crimes (under section • 90.610). Therefore, “evidence of particular acts of ethical misconduct cannot be-introduced to impeach the credibility of a witness.” Pantoja v. State, 59 So.3d 1092, 1096 (Fla. 2011). These questions, were impermissible attacks on Dr. Lloyd’s credibility or character. See also Farinas v. State, 569 So.2d 425, 429 (Fla.1990) (holding that questioning expert witness about specific allegations of misconduct was improper impeachment); Roosevelt v. State, 42 So.3d 293, 296 (Fla. 3d DCA 2010). (holding that the ‘State could not impeach- an expert witness with evidence concerning' past issues with the payment of taxes).
“The proper purposes of cross-examination are: (1) to weaken, .test, or demonstrate the impossibility of the testimony of the .witness on direct examination and, (2) to.impeach the credibility of .the witness, which may involve,, among other things, showing his possible interest in the outcome of the case.” Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982). We have stated that “included in the types of matters that demonstrate, bias are prejudice, interest in the outcome of a case, and any motivation for a witness to testify untruthfully.” Becker v. State, 110 So.3d 473, 476 (Fla. 4th DCA 2013) (quoting Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996)). Dr. Lloyd stated that having the honorary title of professor of medicine helped him gain *1054 grants and funding for his research. However, while this shows that he may have had a reason to misstate his job title on his CV, it. does.not show any bias in his testimony in the case at hand. Dr. Lloyd had no interest in the outcome of this case and his position (or lack thereof) as a professor of medicine was collateral to his testimony, as he did not mention this :position during direct examination or state he had medical training. Therefore, these questions should have been excluded and the trial court erred by allowing these questions.
The Error was “Harmless”
An error is harmless where the State, as the beneficialy of the error, can “prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). In a case with competing expert testimony, the credibility of the experts is of paramount importance. Here, the defense was able to, essentially, “rehabilitate” Dr. Lloyd’s credibility, by eliciting testimony that explained the discrepancies within his C.V.s. The state’s' questioning- was over the line and, accordingly, I do not join the majority opinion in concluding' that the trial court did not abuse its discretion in állowing the state’s questioning. However, I agree with the majority that the harm to defendant’s case was too tangential or collateral as to necessitate reversal. Grau v. Branham, 761 So.2d 375, 378 (Fla. 4th DCA 2000); Caruso v. State, 645 So.2d 389, 394 (Fla.1994).

. This minority view has recently been used to overturn convictions in shaken baby cases around the country. For more information on the science for and against the diagnosis of Shaken Baby Syndrome, see Debbie Cenziper, A Disputed. Diagnosis Imprisons Parents, Wash. Post, Mar. 20, 2015, available at http:// www.washingtonpost.com/graphics/ investigations/shaken-baby-syndrome/.