964 So.2d 106 (2007)
Michael A. TANZI, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-457.
Supreme Court of Florida.
May 10, 2007.
Rehearing Denied August 27, 2007.
*110 Bennett H. Brummer, Public Defender, Andrew Stanton, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee.
PER CURIAM.
Michael A. Tanzi appeals his conviction and sentence of death for first-degree murder. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we affirm his conviction and sentence.

I. FACTUAL AND PROCEDURAL BACKGROUND
During her lunch hour on April 25, 2000, Janet Acosta was reading a book while seated inside her maroon van parked at the Japanese Gardens in Miami. At that time, Tanzi was stranded in Miami without a means of returning to Key West, where he had been residing for the previous months. Tanzi saw Acosta sitting in her vehicle with her window rolled down and approached her, asking for a cigarette and the time. When Acosta was distracted, Tanzi punched her in the face until he gained entry to the van. He then threatened her with a razor blade and drove away with Acosta in the van. Tanzi held Acosta by the wrist until he reached Homestead.
Upon reaching Homestead, Tanzi stopped at a gas station, where he bound Acosta with rope that was in her van and gagged her with a towel. Tanzi further threatened Acosta, telling her that if she kicked or made noise he would cut her from ear to ear. Tanzi took Acosta's fifty-three dollars in cash. He then bought some cigarettes and a soda and attempted to use Acosta's bank card, which he had obtained after rifling through her belongings. While still in Homestead, Tanzi also forced Acosta to perform oral sex, threatening to kill her with his razor if she injured him. However, he stopped her from continuing because Acosta's teeth were loose as a result of the earlier beating.
*111 Tanzi then continued to drive with Acosta bound and gagged in the rear of the van until he reached Tavernier in the Florida Keys, where he stopped at approximately 5:15 p.m. to withdraw money from Acosta's bank account. He again threatened Acosta with the razor in order to obtain Acosta's personal identification number. Tanzi thereafter stopped at a hardware store to purchase duct tape and razor blades.
Tanzi continued his journey until approximately 6:30 p.m. when he reached Sugarloaf Key. He decided that he needed to get rid of Acosta as she was getting in the way. He also knew he would get caught quickly if he released her alive. Tanzi proceeded to Blimp Road, an isolated area in Cudjoe Key. Tanzi told Acosta that he was going to kill her and then crosslaced a piece of rope and began to strangle her. He temporarily stopped to place duct tape over her mouth, nose, and eyes in an attempt to stifle the noise. Tanzi then continued to strangle Acosta until she died. Tanzi disposed of Acosta's body in a wooded, secluded area where he thought she would go unnoticed.
After the murder, Tanzi drove to Key West, where he shopped, ate, smoked marijuana, visited with friends, and used Acosta's ATM card. Tanzi had planned to access more of Acosta's money, sleep in a hotel, purchase drugs, and alter the van's appearance. However, on April 27, 2000, Tanzi's activities were interrupted when the police observed him returning to Acosta's van, which the police had located and placed under surveillance after Acosta's friends and coworkers reported her missing. When the police approached Tanzi, he had receipts in his pocket showing his ATM withdrawals and purchases. Tanzi stated that he "knew what this was about." He also spontaneously stated he wanted to talk about some bad things he had done.
After waiving his rights and while in a police car en route to the Key West Police Department, Tanzi confessed that he had assaulted, abducted, robbed, sexually battered, and killed Janet Acosta. Tanzi repeated his confession with greater detail several times on audio and video tape. Tanzi also showed the police where he had disposed of Janet Acosta's body and where he had discarded the duct tape and rope.
Tanzi was indicted for the first-degree murder of Janet Acosta. He was also charged by amended information with carjacking with a weapon, kidnapping to facilitate a felony with a weapon, armed robbery with a deadly weapon, and two counts of sexual battery with a deadly weapon. Initially, Tanzi pled not guilty; however, shortly before trial, Tanzi entered a guilty plea to the first-degree murder, carjacking, kidnapping, and armed robbery counts. The two remaining sexual battery counts were severed.
After the plea colloquy and following a lunch recess, defense counsel moved to waive the penalty phase jury; however, the trial judge denied the motion. Hours later and arguing pro se, Tanzi stated that he had problems with one of his attorneys and vaguely mentioned that he should have a jury determine his guilt if he was forced to have a penalty phase jury. While the trial judge inquired into Tanzi's dissatisfaction with his attorneys, the judge did not rule on Tanzi's oral motion to withdraw his plea. The case proceeded to the penalty phase before a jury.
On February 19, 2003, the jury returned a unanimous recommendation of a death sentence. The court followed the jury's recommendation and sentenced Tanzi to death, finding that the aggravators greatly outweighed the mitigators.[1] The court *112 also sentenced Tanzi to consecutive life sentences for carjacking with a deadly weapon, kidnapping to facilitate a felony with a deadly weapon, and armed robbery with a deadly weapon.
On May 9, 2003, Tanzi filed a written motion to withdraw his plea, and an evidentiary hearing on the motion was held on November 15, 2004. The court entered a written order denying Tanzi's motion to withdraw his plea on January 6, 2005. This direct appeal followed.

II. ISSUES RAISED ON APPEAL
Tanzi raises six claims on appeal: (A) the trial court erred in denying Tanzi's motion to withdraw his guilty plea; (B) the trial court erred in permitting questions regarding lack of remorse; (C) the trial court erred in permitting impeachment of Tanzi's expert witness by a specific and unrelated act of misconduct; (D) the trial court erred in admitting Tanzi's confession to sexual battery; (E) the trial court erred in assessing the murder in the course of a felony aggravator twice; and (F) the trial court did not properly consider and weigh mitigation evidence.[2] None of these claims warrant relief.

A. Motion to Withdraw Guilty Plea
Tanzi asserts that the trial court abused its discretion in denying his motion to withdraw his plea of guilty of first-degree murder. As stated previously, hours after entering his plea and after the trial court denied his motion to waive the penalty phase jury, Tanzi expressed dissatisfaction with his counsel and vaguely mentioned that he should have a guilt phase jury since he was being forced to have a penalty phase jury. Tanzi's feeling that he should have a jury determine his guilt was intertwined with his expressions of dissatisfaction with his counsel.[3] While *113 the trial court inquired into Tanzi's dissatisfaction with his counsel, the trial court did not inquire into Tanzi's statements regarding a guilt phase. Then, after Tanzi was sentenced, defense counsel presented a more artfully written motion to withdraw Tanzi's guilty plea.
After holding an evidentiary hearing on the motion, the trial court concluded that Tanzi did not establish "good cause" for withdrawing his guilty plea. The trial court's order stated:
The evidence presented showed that Counsel and the Defendant discussed entering a plea of guilty, the reasons for doing so, and the hoped for result. The Defendant knew that the results of the strategy were necessarily uncertain because the decision was entirely within the Court's discretion. Having been fully informed and having elected to adopt the strategy recommended by Counsel, the Defendant will not be heard to repudiate that choice because it was not successful.
The trial court found that Tanzi was properly advised and that Tanzi understood the consequences of his plea, specifically that a penalty phase jury waiver was not guaranteed as a result of his plea.
Because Tanzi orally mentioned a desire to have a guilt phase prior to his sentence, both parties agree that the presentence standard of Florida Rule of Criminal Procedure 3.170(f) applies to Tanzi's motion to withdraw his plea. At the outset, we note that this presentence standard is favorable to defendants, and trial courts are encouraged to liberally grant motions made before sentencing. See State v. Partlow, 840 So.2d 1040, 1044-45 (Fla.2003) (Cantero, J., concurring). However, in this case, Tanzi did not present an unequivocal request to withdraw his plea prior to sentencing. And, when Tanzi presented a written motion to withdraw his plea after sentencing, the trial court properly related the written motion back to the earlier oral motion and applied the more lenient presentence standard of rule 3.170(f).
Specifically, rule 3.170(f) provides that "[t]he court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty to be withdrawn." In Robinson v. State, 761 So.2d 269 (Fla.1999), this Court explained the presentence standard in the following manner:
The burden is upon a defendant to establish good cause under the rule, and use of the word "shall" indicates that such a showing entitles the defendant to withdraw a plea as a matter of right. Use of the word "may," however, suggests that the rule also allows, in the discretion of the court, withdrawal of the plea in the interest of justice, upon a lesser showing than good cause. In any event, this rule should be liberally construed in favor of the defendant. Adler v. State, 382 So.2d 1298, 1300 (Fla. 3d DCA 1980). The law inclines toward a trial on the merits; and where it appears that the interests of justice would be served, the defendant should be permitted to withdraw his plea. Morton v. State, 317 So.2d 145, 146 (Fla. 2d DCA 1975). A defendant should be permitted to withdraw a plea "if he files a proper motion and proves that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting his rights" (emphasis supplied). *114 Baker v. State, 408 So.2d 686, 687 (Fla. 2d DCA 1982).
Id. at 274 (emphasis omitted) (quoting Yesnes v. State, 440 So.2d 628, 634 (Fla. 1st DCA 1983)). At the trial level, "[i]n order to show cause why the plea should be withdrawn, mere allegations are not enough; the defense must offer proof that the plea was not voluntarily and intelligently entered." Id. "Further, on appeal from the denial of the motion to withdraw the plea, the burden rests on the defendant to show the trial court abused its discretion in denying the defendant's motion." Id.
Because the trial court's findings are supported by competent, substantial evidence in the record, we find that the trial court did not abuse its discretion in denying Tanzi's motion to withdraw his plea. For example, the record demonstrates that during the plea colloquy, Tanzi stated that he understood that a penalty phase before a jury would follow and that he could still be sentenced to death. Additionally, Tanzi signed an affidavit, which was presented to the court when Tanzi moved to waive the penalty phase jury, that indicated that "[n]o person has made any `off the record' assurances to him regarding the consequences of this plea." At the evidentiary hearing, Tanzi's counsel, Mr. Kuypers, testified that Tanzi agreed to a strategy of pleading guilty and then requesting a jury waiver. Mr. Kuypers also testified that he had explained to Tanzi that it was uncertain whether the trial court would agree to the jury waiver and that Tanzi appeared to understand. Further, during the Nelson inquiry, Tanzi stated that his counsel accurately advised him that he "would be able to waive the jury part of the guilt phase, but [he] wouldn't be able to waive the jury part of the trial of the penalty phase."
Therefore, the trial court's findings are supported by competent, substantial evidence in the record. And, this Court "recognize[s] and honor[s] the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact." Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). Accordingly, we find that the trial court did not abuse its discretion in denying Tanzi's motion to withdraw his plea.

B. Lack of Remorse
Tanzi alleges that the trial court erred in allowing the State to present evidence of lack of remorse. In an attempt to establish mitigation, Tanzi's own mental health expert explained on direct examination how antisocial personality disorder can develop from childhood abuse, and that lack of remorse, particularly as a child, is a symptom of antisocial personality disorder. This same mental health expert indicated that Tanzi suffered from antisocial personality disorder. Consistent with the defense expert's theory, the State during rebuttal mentioned that childhood mental health reports indicated Tanzi demonstrated lack of remorse as a child. In its closing, the State also mentioned these childhood reports and that lack of remorse is a symptom of antisocial personality disorder. The trial court instructed the jury that lack of remorse is not an aggravating circumstance and that the jury was not to consider it as one.
"The admissibility of evidence is within the sound discretion of the trial court, and the trial court's determination will not be disturbed on appellate review absent a clear abuse of that discretion." Brooks v. State, 918 So.2d 181, 188 (Fla. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2294, 164 L.Ed.2d 820 (2006). This Court's precedent clearly prohibits lack of remorse as evidence of an aggravating factor. In Pope v. State, 441 So.2d 1073, 1078 (Fla.1983), this Court held that "lack of *115 remorse is not an aggravating factor" and that "lack of remorse should have no place in the consideration of aggravating factors." Additionally, in Atwater v. State, 626 So.2d 1325, 1328 (Fla.1993), this Court found that a trial court "erred in permitting the State on cross-examination to ask [the defense's expert] whether persons with antisocial personality showed remorse." However, this Court has permitted evidence of lack of remorse to rebut proposed mitigation, such as remorse and rehabilitation. See Singleton v. State, 783 So.2d 970, 978 (Fla.2001) (holding "that lack of remorse is admissible to rebut evidence of remorse or other mitigation such as rehabilitation"); cf. Derrick v. State, 581 So.2d 31, 36 (Fla.1991) (finding that although lack of remorse is permitted to rebut evidence of remorse or rehabilitation, the trial court erred in permitting the State to present evidence of lack of remorse before the defense presented any testimony).
In this case, the trial court did not abuse its discretion in allowing the State's questions regarding lack of remorse. Tanzi's mitigation witness opened the door to this line of questioning. See Ellison v. State, 349 So.2d 731, 732 (Fla. 3d DCA 1977) ("Having opened the door to this line of questioning by his own direct testimony, [defendant] cannot now be heard to complain that the State marched through the door so opened."). Further, from a review of the record, it is clear that the State used lack of remorse to rebut the proposed mitigator of bipolar disorder, not to establish an aggravator. The State did not present any testimony regarding Tanzi's remorse or lack thereof for Acosta's murder. Moreover, the trial judge instructed the jury that it was not to consider lack of remorse as an aggravator. Because lack of remorse was mentioned by the defense on direct and because the State used it to rebut a proposed mitigator, we find that the trial court did not abuse its discretion.

C. Impeachment of Expert Witness
Tanzi asserts that the trial court abused its discretion when it permitted the State to impeach the character of Dr. Vicary, a defense mental health expert, with a specific and unrelated act of misconduct. More specifically, the trial court allowed the prosecution to question Dr. Vicary regarding a 1998 suspension of his California medical license due to his involvement in the case of Eric Menendez as both a treating physician and a forensic scientist. At the direction of Menendez's attorney, Dr. Vicary had rewritten his notes and deleted passages that were damaging to the defense.
A trial court's admission of evidence will not be disturbed on appeal absent a clear abuse of discretion. Brooks, 918 So.2d at 188; see also Morrison v. State, 818 So.2d 432, 448 (Fla.2002) ("[T]he decision as to whether a particular question properly goes to interest, bias, or prejudice lies within the discretion of the trial judge.") (quoting Charles W. Ehrhardt, Florida Evidence § 608.5 (1997 ed.)). While impeachment of a witness's character by specific acts of misconduct is prohibited, Fernandez v. State, 730 So.2d 277, 282 (Fla.1999); Farinas v. State, 569 So.2d 425, 429 (Fla.1990), "[o]ur evidence code liberally permits the introduction of evidence to show the bias or motive of a witness." Gibson v. State, 661 So.2d 288, 291 (Fla.1995). "Included within the types of matters that demonstrate bias are those that relate to the interest of the witness, favoritism, and corruption." Morrison, 818 So.2d at 447 (alteration in original) (quoting Ehrhardt, supra § 608.5).
Dr. Vicary's willingness to forge his interview notes at the request of a defense attorney could illustrate Dr. Vicary's corruption as a mental health expert. Therefore, *116 because this line of impeachment could properly relate to the witness's bias, we find that the trial court did not abuse its discretion in permitting it.

D. Sexual Battery Confession
Next, Tanzi claims that the trial court failed to follow the requirements of section 92.565, Florida Statutes (2002), when admitting Tanzi's confession to sexual battery. However, the trial court admitted Tanzi's sexual battery confession because it found the existence of a prima facie case (or in other words, the existence of the corpus delicti), making it unnecessary for the trial court to test the reliability of the confession using the procedures outlined in section 92.565.
It is within the trial court's province "to determine the sufficiency of the proof of the corpus delicti." Frazier v. State, 107 So.2d 16, 26 (Fla.1958). This Court has articulated the following standards that govern a corpus delicti analysis:
The general order of proof is to show that a crime has been committed and then that the defendant committed it. Spanish v. State, 45 So.2d 753 (Fla. 1950); see State v. Allen, 335 So.2d 823 (Fla.1976). "But in many cases the two elements are so intimately connected that the proof of the corpus delicti and the guilty agency are shown at the same time." Spanish, 45 So.2d at 754. Thus, the "evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together and inseparable on one foundation of circumstantial evidence." Cross v. State, 96 Fla. 768, 780-81, 119 So. 380, 384 (1928). A defendant's confession or statement "may be considered in connection with the other evidence," but "the corpus delicti cannot rest upon the confession or admission alone." Id. at 781, 119 So. at 384. Before a confession or statement may be admitted, there must be prima facie proof tending to show the crime was committed. Frazier v. State, 107 So.2d 16 (Fla.1958); Cross; see Farinas v. State, 569 So.2d 425 (Fla.1990); Bassett v. State, 449 So.2d 803 (Fla.1984). Additionally, by the end of trial the corpus delicti must be proved beyond a reasonable doubt. Cross.

Schwab v. State, 636 So.2d 3, 6 (Fla.1994).
Based upon the facts in the record, the same facts which were before the trial court, the trial court did not err in finding the required prima facie existence of the corpus delicti. Tanzi confessed to forcing Acosta to perform oral sex under a threat to cut her throat with a razor and that he ordered her to stop when her loose teeth had lessened his pleasure. A medical examiner determined that Acosta's teeth were in fact loose. A towel containing Tanzi's semen was found in Acosta's van, the location Tanzi indicated the oral sexual battery took place. Further, razors were discovered in Acosta's van. Based on these facts, the trial court did not abuse its discretion in finding the corpus delicti and admitting Tanzi's confession to sexual battery.

E. Assessment of the Murder in the Course of a Felony Aggravator
Tanzi asserts that the trial court impermissibly doubled the aggravator that the murder was committed during the course of a felony by listing its finding that Tanzi committed the murder during the course of a kidnapping as aggravator number two and by listing its finding that Tanzi committed the murder during the course of sexual batteries as aggravator number three.
In reviewing aggravating factors on appeal, this Court "review[s] the record to determine whether the trial court applied the right rule of law for each *117 aggravating circumstance and, if so, whether competent substantial evidence supports its finding." Willacy v. State, 696 So.2d 693, 695 (Fla.1997). Section 921.141(5), Florida Statutes (1999), provides an exclusive list of aggravating factors, expressly stating that "[a]ggravating circumstances shall be limited to" those aggravators. This Court has stated that section 921.141 "is designed to limit the unbridled exercise of judicial discretion in cases where the ultimate penalty is possible." Provence v. State, 337 So.2d 783, 786 (Fla.1976). The particular statutory aggravator at issue is:
The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any: robbery; sexual battery; aggravated child abuse; abuse of an elderly person or disabled adult resulting in great bodily harm, permanent disability, or permanent disfigurement; arson; burglary; kidnapping; aircraft piracy; or unlawful throwing, placing, or discharging of a destructive device or bomb.
§ 921.141(5)(d), Fla. Stat. (1999). Nothing in this provision appears to authorize a trial court to treat this single aggravator as multiple and separate aggravators depending upon the number of felonies committed. Instead, if a trial court determines that a defendant committed a capital offense during the course of any of the felonies delineated above, the trial court can find this single aggravating circumstance. See also Stevens v. State, 419 So.2d 1058, 1063-64 (Fla.1982) (treating the fact that a murder was committed during the course of multiple felonies as a single aggravating circumstance). Of course, the trial court is free to give this single felony murder aggravating circumstance greater weight due to the fact the murder was committed during the course of multiple felonies. Therefore, the trial court in this case should have found one murder in the course of a felony aggravator based upon the multiple felonies of kidnapping and sexual battery and weighed the aggravator accordingly.
Having determined that one murder in the course of a felony aggravating circumstance was erroneously listed by the trial court, this Court must determine if this error was harmless. The record reflects six valid aggravators: (1) that the murder was committed by a person previously convicted of a felony and under sentence of imprisonment or on community control or on felony probation; (2) that the murder was committed while Tanzi was engaged in the commission of kidnapping and sexual batteries; (3) that the murder was committed for the purpose of avoiding arrest; (4) that the murder was committed for pecuniary gain; (5) that the murder was especially heinous, atrocious, or cruel (HAC); and (6) that the murder was committed in a cold, calculated, and premeditated manner (CCP). The trial court gave each of these valid aggravators "great weight" except the HAC aggravator, which the trial court gave "utmost weight." Therefore, there are six substantial aggravators, including the HAC and CCP aggravators, and nonstatutory mitigation that the trial judge gave "some weight" and "some small weight." After carefully reviewing the record, including the jury's unanimous recommendation of death, it is clear beyond a reasonable doubt that even without a second murder in the course of a felony aggravator, the trial court would have found that the aggravating factors present in this case substantially outweighed the mitigating evidence. Thus, this Court concludes beyond a reasonable doubt that the error did not contribute to the trial court's imposition of a death sentence. See State v. DiGuilio, 491 So.2d *118 1129, 1135 (Fla.1986) (stating that the harmless error test requires the State "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict").

F. Consideration of Mitigation Evidence
Tanzi next claims that the trial court erred in three respects: first, by failing to properly weigh the mitigating factors; second, by not finding the proposed mitigating factor of a history of substance abuse; and third, by not finding the proposed mitigating factor of the alternative of life without parole. "When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature." Campbell v. State, 571 So.2d 415, 419 (Fla.1990) (footnote omitted), receded from on other grounds by Trease v. State, 768 So.2d 1050, 1055 (Fla.2000). "Whether a particular circumstance is truly mitigating in nature is a question of law and [is] subject to de novo review by this Court[.]" Ford v. State, 802 So.2d 1121, 1135 (Fla. 2001) (quoting Blanco v. State, 706 So.2d 7, 10 (Fla.1997)). "A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established." Campbell, 571 So.2d at 419-20 (quoting Fla. Std. Jury Instr. (Crim.) Homicide). However, "[i]f competent substantial evidence exists to support a trial court's rejection of proposed mitigation, that rejection will be upheld on appeal." Banks v. State, 700 So.2d 363, 368 (Fla. 1997). "The relative weight given each mitigating factor is within the discretion of the sentencing court." Trease, 768 So.2d at 1055. "[W]hile a proffered mitigating factor may be technically relevant and must be considered by the sentencer because it is generally recognized as a mitigating circumstance, the sentencer may determine in the particular case at hand that it is entitled to no weight for additional reasons or circumstances unique to that case." Id.

(1) Weighing Mitigation
First, Tanzi claims that the trial court abused its discretion in assigning "some weight" to most of the mitigating circumstances it determined were established. The trial court considered each of the twenty-three mitigating circumstances supplied by Tanzi, and the trial court provided detailed factual findings as to reasons or unique circumstances upon which it based its evaluation of each mitigating circumstance. The trial court's findings are supported by competent, substantial evidence in the record. Further, the trial court detailed the weight it decided to afford to each established mitigator with the one exception of the substance abuse mitigator. Having expressly considered each mitigator and the unique circumstances of this case, we find that the trial court did not abuse its discretion in weighing the mitigating circumstances.

(2) History of Drug Abuse
Second, Tanzi asserts that the trial court erred in its evaluation of the proposed mitigating circumstance that Tanzi had a history of substance abuse. After a lengthy discussion of Tanzi's substance abuse at the time of the crime, the trial court's sentencing order stated the following conclusion regarding this mitigating circumstance:
The court finds that the Defendant has a history of drug abuse and dependence, but that this problem was in remission *119 at the time. This is borne out by the fact that after he robbed the victim of the $53 that was in her purse, he used the money to purchase a soda and several packs of cigarettes. He did not buy alcohol or attempt to buy drugs in Florida City. As it was in remission, this problem did not contribute to the commission of this capital crime.
The trial court's order expressly states that that the proposed mitigating circumstance of a history of substance abuse was established. Although the trial court ideally should have assigned a specific weight to this mitigator, it is clear that the trial court carefully evaluated this mitigating factor. Its findings that Tanzi's problem was in remission at the time of the crime and that Tanzi was not under the influence at the time of the crime indicate that the trial court did not place much weight on this mitigator. Further, its finding that Tanzi's substance dependence was in remission is supported by competent, substantial evidence in the record. Therefore, because the trial court carefully evaluated Tanzi's substance abuse, found that Tanzi had a history of substance abuse, and included detailed findings regarding its significance as a mitigating factor that are supported by competent, substantial evidence, any possible error in the trial court's articulation of this mitigating circumstance was harmless. See Morris v. State, 811 So.2d 661, 667 (Fla.2002) (finding that the trial court found and properly weighed defendant's history of drug abuse as a mitigating circumstance even though the sentencing order's language was confusing); Barwick v. State, 660 So.2d 685, 696 (Fla.1995) ("Any error in articulating the particular mitigating circumstance was harmless."), receded from on other grounds by Topps v. State, 865 So.2d 1253 (Fla.2004).

(3) Alternative Sentence of Life without Parole
Finally, Tanzi claims that the trial court erred in its generalized rejection of the proposed mitigating circumstance that a sentence of life imprisonment without the possibility of parole would protect society. This Court has held that "[p]arole ineligibility is mitigating in nature because it relates to the circumstances of the offense and reasonably may serve as a basis for imposing a sentence less than death." Ford, 802 So.2d at 1136. "While [parole ineligibility] is mitigating in nature, it may or may not be mitigating under the facts in the case at hand (that is for the trial court to determine)." Id.
The trial court included the following in its sentencing order regarding this proposed mitigating factor:
This is not a mitigating circumstance. Arguably, it would be true for all capital cases.
Protection of society is a proper consideration as one of the goals to be achieved through incarceration of a criminal. However, imprisonment will not guarantee that a prisoner will not commit any further criminal acts. Incarcerated prisoners commit crimes. And a life sentence without the possibility of parole does not guarantee that a prisoner will not escape at some time in the future.
This court is of the opinion that the legislature did not intend to create an automatic mitigator when enacting the law providing for the sentence of life without the possibility of parole in capital cases. The court will give this alternative sentence no weight as a mitigator.
In its order, the trial court does not decide whether life without the possibility of parole was mitigating under the particular facts of this case. Instead, the trial court found that life without the possibility of *120 parole is not mitigating in nature, a finding that is contrary to this Court's precedent. However, any error present was harmless beyond a reasonable doubt in light of the following: (a) the trial court recognized and gave weight to numerous other mitigating circumstances; (b) this case involves substantial aggravation, including the HAC and CCP aggravating circumstances; and (c) the life without parole proposed mitigator is minor and tangential with respect to the record in this case. Accordingly, Tanzi's claim is denied.[4]

III. PROPORTIONALITY
"This Court must review the proportionality of a death sentence, even if the issue has not been raised by the defendant." Bolin v. State, 869 So.2d 1196, 1204 (Fla.2004). Proportionality review "is not a comparison between the number of aggravating and mitigating circumstances." Crook v. State, 908 So.2d 350, 356 (Fla. 2005) (quoting Urbin v. State, 714 So.2d 411, 416 (Fla.1998)). Instead, the Court considers the totality of the circumstances to determine if death is warranted in comparison to other cases where the death sentence has been upheld. Davis v. State, 859 So.2d 465, 480 (Fla.2003). In addition, the heinous, atrocious, or cruel aggravator and the cold, calculated, and premeditated aggravator are "two of the most serious aggravators set out in the statutory sentencing scheme." Larkins v. State, 739 So.2d 90, 95 (Fla.1999).
The instant case involves a murder by strangulation after a kidnapping, robbery, and carjacking. The jury recommended death by a vote of twelve to zero for one count of first-degree premeditated murder. The trial court found six aggravating factors beyond a reasonable doubt, including HAC, CCP, prior felony, and commission for pecuniary gain. The trial court gave each aggravating circumstance "great weight," except the HAC aggravator, which the judge gave "utmost weight." The court found no statutory mitigators, although the trial court gave "some weight" and "some small weight" to ten nonstatutory mitigating circumstances: (1) "axis two" personality disorders; (2) institutionalization as a youth; (3) positive response to psychotropic drugs; (4) death of father at young age; (5) sex abuse as a child; (6) attempts to join the military; (7) cooperation with police; (8) assistance of inmates and love of reading; (9) familial relationship; and (10) history of substance abuse.
Under the totality of the circumstances, Tanzi's sentence is proportional in relation to other death sentences that this Court has upheld. See, e.g., Davis, 859 So.2d 465 (finding death sentence proportional where three aggravators, including crime committed while on felony probation, HAC, and CCP, outweighed one statutory mitigator and four nonstatutory mitigators); Johnston v. State, 841 So.2d 349 (Fla.2002) (finding death sentence proportionate for sexual battery, beating, and strangulation where court found prior violent felony, murder in the course of a felony, pecuniary gain, and HAC aggravators); Blackwood v. State, 777 So.2d 399 (Fla.2000) (finding death sentence proportional for strangulation where court found HAC aggravator, one statutory mitigator, and eight nonstatutory mitigators); Mansfield v. State, 758 So.2d 636 (Fla.2000) (upholding death sentence where two aggravators, HAC and crime committed during the commission of a sexual battery, outweighed five nonstatutory mitigators); Hauser v. State, 701 *121 So.2d 329 (Fla.1997) (finding death sentence proportionate where victim was strangled and trial court found three aggravators of HAC, CCP, and pecuniary gain, measured against one statutory mitigator and four nonstatutory mitigators). Accordingly, Tanzi's death sentence is proportional.

IV. SUFFICIENCY
This Court reviews "the record of a death penalty case to determine whether the evidence is sufficient to support the murder conviction." Winkles v. State, 894 So.2d 842, 847 (Fla.2005). "However, `[w]hen a defendant has pled guilty to the charges resulting in a penalty of death, this Court's review shifts to the knowing, intelligent, and voluntary nature of that plea.'" Id. (quoting Lynch v. State, 841 So.2d 362, 375 (Fla.2003)).
Tanzi's plea was knowing and voluntary. During the plea colloquy, Tanzi expressed an understanding of the consequences of his plea, including an understanding that he could still face the death penalty. Tanzi also stated that he was not coerced or promised anything in return. Additionally, in its order denying Tanzi's motion to withdraw his plea, the trial court concluded that when Tanzi pled guilty, he was "fully informed" and "elected to adopt the strategy recommended by Counsel." The trial court's findings are supported by competent, substantial evidence in the record. Accordingly, this Court finds that Tanzi voluntarily and knowingly entered his plea and that the trial court properly accepted it.

V. CONCLUSION
For the reasons expressed above, we deny each claim raised on appeal and affirm Tanzi's conviction and sentence of death.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Specifically, the trial court found the following aggravators: (1) that the murder was committed by a person previously convicted of a felony and under sentence of imprisonment or on felony probation; (2) that the murder was committed during the commission of a kidnapping; (3) that the murder was committed during the commission of two sexual batteries; (4) that the crime was committed for the purpose of avoiding arrest; (5) that the murder was committed for pecuniary gain; (6) that the murder was especially heinous, atrocious, or cruel (HAC); and (7) that the murder was committed in a cold, calculated, and premeditated (CCP) manner. The court gave each aggravator "great weight" except the HAC aggravator, which the court gave "utmost weight." The court found the following mitigators: (1) that Tanzi suffered from "axis two" personality disorders; (2) that he was institutionalized as a youth; (3) that his behavior benefited from psychotropic drugs; (4) that he lost his father at an early age; (5) that he was sexually abused as a child; (6) that he twice attempted to join the military; (7) that he cooperated with law enforcement; (8) that he assisted inmates by writing letters and that he enjoys reading; (9) that that his family has a loving relationship for him; and (10) that he had a history of substance abuse.
[2] Tanzi also claims that Florida's death sentencing statute violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, we need not reach this issue because in this case the jury unanimously recommended a death sentence, and Tanzi pled guilty to kidnapping, robbery, and carjacking, thereby establishing the aggravators of a murder committed during the course of a felony.
[3] Arguing pro se, Tanzi confusingly alleged the following, among other items: (a) that he had a sexual relationship with his lead counsel; (b) that his counsel was incompetent and lied; (c) that he should not need two attorneys; (d) that he should have a guilt phase if he was forced to have a penalty jury; (e) that there is no difference between the slow death of a life sentence and the fast death of the death penalty; and (f) that a plea would be a waste of the Court's time. Further, during the inquiry held pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), that followed, Tanzi unsuccessfully attempted numerous arguments to disqualify his lead counsel, including (a) accusations of sexual contact (i.e., sexual touching and his masturbating in her presence); (b) statements that he would threaten to harm or kill his attorneys and statements that such threats had worked previously in other states to disqualify his attorneys; (c) accusations that his attorney lied to the court; and (d) a claim that his counsel had provided incorrect advice when counsel accurately informed him that he could waive the guilt jury but not the penalty jury.
[4] Tanzi's reply brief also included a claim that he should be entitled to relief based on cumulative error. When considering all of Tanzi's claims cumulatively, this Court remains confident in the outcome. Therefore, we reject this claim as well.