RAMIREZ, C.J.
(concurring).
I concur in the majority opinion except as to the use of the e-mail in cross-examination. The prosecutor was allowed to cross-examine Dr. Brown with an e-mail Dr. Brown sent to a defense attorney in Orlando several years ago. The e-mail did not involve a Jimmy Ryce Act proceeding. The matter was clearly collateral to this case, yet the prosecution was allowed to question the doctor on this matter ostensibly to show interest, bias, or prejudice. Although I realize that “a decision as to whether a particular question properly goes to interest, bias, or prejudice lies within the discretion of the trial judge,” Morrison v. State, 818 So.2d 432, 448 (Fla.2002), I believe on retrial, the prosecution should not be allowed to use this e-mail on cross-examination.
Impeachment of a witness’s character by specific acts of misconduct is prohibited. See §§ 90.608, 609, 610, Fla. Stat. (2007). See also Fernandez v. State, 730 So.2d 277, 282 (Fla.1999); Farinas v. State, 569 So.2d 425, 429 (Fla.1990). In a case indistinguishable from our situation, the Second District, in an en banc opinion, held that “counsel may not make inquiries on cross-examination about unethical conduct on the part of expert witnesses, or disciplinary actions in their profession.” In re: Commitment of DeBolt, 19 So.3d 335, 337 (Fla. 2d DCA 2009). In that case, the State sought to have DeBolt civilly committed as a sexually violent predator pursuant to the Jimmy Ryce Act. Id. at 336-37. During cross-examination of one of DeBolt’s expert witnesses at the civil commitment trial, the State was permitted to ask questions regarding the expert’s previous disciplinary proceedings, which had nothing to do with the expert’s work in Florida in Jimmy Ryce cases. Id. at 337. Thereafter, DeBolt was committed. Id. DeBolt appealed, alleging that the trial court erred in permitting the State to attack the credibility of DeBolt’s witness regarding a past disciplinary matter. Id. The Second District agreed, stating that the trial court abused its discretion when it allowed the questioning regarding the expert’s formal disciplinary proceedings:
Section 90.609, Florida Statutes (2006), provides that the character of a witness may be attacked only by reputation evidence that refers to character relating to truthfulness. Under section 90.610, a witness’s ability can only be impeached by convictions of crimes involving false statements or dishonesty. Thus, evidence regarding particular acts *299 of misconduct may not be introduced for purposes of impeaching a witness’s credibility.
Id. (citations omitted).
Our case is even stronger than DeBolt because the e-mail never resulted in disciplinary proceedings. Under the analysis set forth in DeBolt, the prosecutor here should not be permitted to use the e-mail to discredit Dr. Brown. Even if Dr. Brown had been found guilty of unethical conduct for writing the e-mail, under De-Bolt, the prosecution would not be allowed to cross-examine the witness for such a particular act of misconduct.
The majority seems to rely on an exception to this impeachment rule because it demonstrates a bias by the witness. Tanzi v. State, 964 So.2d 106, 115 (Fla.2007). The e-mail in question involved a case about whether a young man should be Baker-Acted and involuntarily placed in a mental facility. It read as follows: “Joe is in remission and has been for several years. He doesn’t need to be Baker Acted unless it will help his case. (I expect the Baker Act facility to discharge him fairly quickly as there are not current symptoms or psychosis.)” The e-mail does not say anything about testimony, much less tailoring testimony, yet that was precisely what the prosecutor was allowed to ask about. The transcript reads as follows:
Q. [by Ms. Isidron] And on at least one occasion, you’ve indicated a willingness to, sort of, tailor your testimony if that end result will be that it helps a defendant or a respondent in his case, correct?
A. [by Dr. Brown] No, I’ve never done that. And you’re referring to an email that I sent in Orlando, and it was not about my testimony regarding civil commitment issues, whether or not somebody met criteria because I was long on record with regard to this individual that he did not meet criteria.
It was whether or not he had an active Schizophrenic psychosis at the time. And so the question that — there was lots of communication by telephone about whether or not this young man should be Baker Acted, put into a psychiatric institution if he was released at trial, his civil commitment trial.
And so the attorney asked me to research that issue and determine whether or not a Baker Act was appropriate, and this was the first time in this state that the issue had come up because it was a new issue for the civil commitment context. I indicated that the Baker Act facility, a psychiatric facility as the first step down from the civil commitment center might be helpful because it would be — it would help clarify whether or not he actually had an active psychosis because it would be evaluated by a psychiatrist. And that’s what that email was involving.
Q. Isn’t it fact a fact you wrote, Joe is in remission and has been for several years. He doesn’t need to be Baker Acted unless it will help his case. Then in parenthesis you wrote, I expect the Baker Act facility to discharge him fairly quickly as there are no current symptoms of psychosis?
A. That’s right. And at that point I was on record for testifying for the defense. And it is appropriate, and it is common for evaluators to assist in release negotiations. Sometimes I have even assisted the State in release planning for a respondent. In fact, I have done that in Daytona Beach.
Q. Okay. Wait a minute. Are you trying to say to this jury that telling an attorney, [h]e doesn’t need to be Baker Acted; but if it helps the case, I’ll say he should be?
A. I wasn’t talking about the civil commitment case. I was talking about his psychiatric case, his psychiatric con *300 dition because it was not determined definitely at the civil commitment whether or not he still had an active psychosis even I felt he was in long term remission. So it was my opinion that it might help if a psychiatrist were to evaluate him in addition to a psychologist.
Q. Wait, wait. A Baker Act is when somebody is placed in a hospital against their will, right?
A. That’s correct.
Q. And a Baker Act is when somebody is going to hurt themselves or presents a danger to hurt others, right?
A. Yes, but there’s also an evaluation process.
Q. A Baker Act is something that goes against the person that’s going to be Baker Acted, right?
A. Yes, that’s true.
Q. And you indicated even if he was Baker Acted, he was going to be released by them because there was no evidence of psychosis?
A. That was my opinion, but I wanted — I recommended that my opinion be followed up with a second opinion from a psychiatrist.
Q. Now, you say he couldn’t see a psychiatrist unless he was Baker Acted?
A. No, he could not.
Q. Are you telling this jury that you suggested that a man be Baker Acted in order — if it would help the case because there was no psychiatrist that could see him unless he was Baker Acted?
A. At point in time there was no way for a private psychiatrist, no way to pay the psychiatrist, and no way to get a private psychiatrist into the civil commitment center to evaluate someone. It had never been done.
The majority approves this entire line of questioning, citing Tanzi, 964 So.2d 106 (Fla.2007). In Tanzi, the prosecution was allowed to cross-examine the defense expert on the basis of misconduct that resulted in the suspension of the expert’s medical license. His suspension was because, at the direction of defense counsel, the doctor had rewritten his notes and deleted passages that were damaging to the defense. Id. at 115-16. The Tanzi case thus involved a specific act of misconduct of a doctor forging his interview notes at the request of defense counsel leading to his suspension from the practice of medicine.
Here, unlike in Tanzi, we have an e-mail that forged nothing. No testimony was given, no prevarication was proven, and no discipline was contemplated. Yet the prosecution was allowed to cross-examine Dr. Brown extensively and argumentatively, misleading the jury to think that it showed she was willing to “tailor her testimony.” I believe the doctor’s explanation was perfectly reasonable, yet the prosecution here was allowed to confuse the jury with a series of questions about a civil commitment under the Baker Act, which is entirely different from a commitment of someone accused of being a sexually violent predator under the Jimmy Ryce Act. Accordingly, on retrial, I would not allow the prosecution to cross-examine Dr. Brown about the e-mail.