# Supreme Court of Florida

_____

No. SC15-628
_____

**JOSHUA LEE ALTERSBERGER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC15-1612
_____

**JOSHUA LEE ALTERSBERGER,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[April 27, 2017]

PER CURIAM.

Joshua Lee Altersberger appeals an order of the circuit court denying his

motion to vacate his conviction of first-degree murder and sentence of death filed

under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ

of habeas corpus. For the reasons that follow, we vacate the death sentence and remand for a new penalty phase.[1]

## I. BACKGROUND

On direct appeal, this Court described the facts as follows:

> Late in the morning of January 12, 2007, the [d]efendant drove to a friend's home in Highlands County. Also at the home was Quentin Kinder, who was in Florida to avoid arrest for violating his Georgia probation. After drinking and playing videogames, Altersberger left the home with Kinder. Kinder testified that, at this point, Altersberger was not so affected by the alcohol that his speech was impaired but was "buzzing a little bit."
> Later that afternoon, around 3:00 p.m., Altersberger drove with Kinder to a restaurant in Lake Placid in an effort to meet a girl whom he believed to be working there. Upon learning that the girl was not at work, Altersberger drove with Kinder to a nearby convenience store so that he could buy a cigar. As Altersberger and Kinder were walking out of the store, the two noticed a deputy sheriff in a marked patrol car stopped at a red light. Kinder then heard Altersberger state, as though he was speaking to the deputy, "You better not stop me or I'm going to shoot you."
> Altersberger left the store with Kinder and drove north on Highway 27 out of Lake Placid. Altersberger's driving was aggressively erratic, and he swerved several times in and out of heavy afternoon traffic. At one point, Altersberger had to swerve in the midst of a lane change in order to avoid striking another car. This attracted the attention of Florida Highway Patrol Sergeant Nick Sottile who had been travelling in the opposite direction and who turned to pursue.
> Kinder saw Sergeant Sottile turn around and notified Altersberger. Altersberger responded by saying that he was going "to push it," or speed up to flee. Kinder told Altersberger not to try to flee and also said that, because of his Georgia probation violation, he was going to run from the car once Altersberger pulled over. As he

---

1. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

- 2 -

was pulling over, Altersberger cut sharply from the left lane across the right lane, cutting off and nearly striking a semi truck. And, as Altersberger pulled off the roadway, he stated to Kinder that he was going to shoot Sergeant Sottile. Kinder told Altersberger not to shoot the officer, and then got out of the car and ran into a nearby orange grove.

Intending to complain to Sergeant Sottile about Altersberger's driving, the semi truck driver pulled over behind the trooper's patrol car. The truck driver then got out of his truck and walked toward Sergeant Sottile, who ordered him back to his truck. From the elevated cab of his semi truck, the driver was able to observe the events that followed.

Sergeant Sottile approached Altersberger's driver's side window with his hand resting on his gun. Altersberger raised his hands as Sottile approached and kept them raised while he spoke with Sottile for a short time. Sottile, appearing to be more comfortable with the situation, took his hand from his gun. After Sottile took his hand off his gun, Altersberger lowered his hands and pulled a gun. Sergeant Sottile raised his hands and started to back away from Altersberger's window when Altersberger shot him. Sergeant Sottile was hit near his left collar bone and fell backward to the ground. Altersberger then reached out the window of his car to aim his gun at Sergeant Sottile and tried several times to shoot him in the head, but his gun would not fire. Altersberger then rapidly drove away. Sergeant Sottile died shortly thereafter as a result of internal bleeding from the gunshot wound.

Altersberger pled guilty to first-degree murder on March 13, 2009. At the penalty phase, the State presented testimony regarding the murder of Sottile. The defense presented laywitness testimony of Altersberger's mother and aunt, one of his mother's friends, and the testimony of former teachers and health department employees who remembered Altersberger as a child. These witnesses testified that Altersberger had an impoverished and unstable upbringing and a history of anger problems. They also testified that his mother had very poor parenting skills, did not make good decisions regarding the men that she brought around her children, did not treat or discipline Altersberger appropriately, and did not display affection toward him.

Altersberger also presented the testimony of two mental health experts. The first, Dr. Krop, a forensic psychologist, testified that Altersberger has anger issues that stem from his dysfunctional

relationship with his mother and the insecurity caused by her poor parenting and decision-making throughout his childhood. Dr. Krop also explained that, despite his 103 IQ, Altersberger has problems with planning and impulse control and was extremely immature for his age, both socially and developmentally. Dr. Gur, a neuropsychologist who specializes in neuroimaging, testified that the orbital frontal and amygdala regions of Altersberger's brain are significantly undersized and that such a condition would result in impaired ability to control and regulate emotions and impulses, an impairment that would be exacerbated by drug and alcohol use or abuse. However, Dr. Gur stated that, because he had never met Altersberger and was not familiar with the facts of the case, he could not connect his findings to the crime itself.

The jury recommended the death penalty by a vote of nine to three. After a Spencer[N.1] hearing, the trial court followed the jury's recommendation and sentenced Altersberger to death. In so doing, the trial court found the following aggravators: (1) the victim was a law enforcement officer engaged in the lawful performance of his official duties (great weight); and (2) the murder was committed in a cold, calculated, and premeditated manner (CCP) without any pretense of moral or legal justification (great weight). The trial court also found the following mitigators: (1) Altersberger was 19 years old at the time of the murder (slight weight); (2) Altersberger's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired (moderate weight);[N.2] (3) the offense was committed in an unsophisticated manner (very, very slight weight); (4) Altersberger was under the influence of alcohol at the time of the offense (little weight); (5) Altersberger had a long-term history of substance abuse from age 15 (very slight weight); (6) Altersberger was brought up in a dysfunctional family and home environment (moderate weight); (7) Altersberger loves and is valued by his family (very slight weight); (8) Altersberger loved his grandfather and was devastated by his death (very slight weight); (9) Altersberger was the victim of racial discrimination within his own family (little weight); (10) Altersberger maintained good behavior throughout the proceedings (very slight weight); and (11) Altersberger [pled] guilty and took responsibility for the offense (little weight). In weighing the aggravators and mitigators and determining death to be the appropriate sentence, the trial court specifically stated "that the aggravating circumstances in this case far outweigh the mitigating

- 4 -

circumstances" and that "either aggravating circumstance alone would outweigh all of the mitigating circumstances."

> [N.1] Spencer v. State, 615 So. 2d 688 (Fla. 1993).
>
> [N.2] The trial court merged the following nonstatutory mitigating circumstances into this one statutory mitigator: (1) Altersberger did not fully develop emotionally; (2) Altersberger did not fully develop cognitively; (3) Altersberger has brain deficiencies that reduce his ability to control impulse behavior; (4) Altersberger has brain deficiencies that reduce his capacity to make reasoned decisions; (5) Altersberger suffered significant emotional deprivation while he was growing up that adversely affected his psychological development; and (6) Altersberger's dysfunctional family life prevented healthy psychological development. The court then explained that it gave each mitigator slight weight, individually, but moderate weight when merged and considered collectively.

Altersberger v. State, 103 So. 3d 122, 124-26 (Fla. 2012).

This Court affirmed Altersberger's conviction and death sentence on direct appeal. Id. at 131. On direct appeal, Altersberger argued that the trial court erred in finding the CCP aggravator. Id. at 126. And this Court also reviewed whether Altersberger's plea was knowingly, intelligently, and voluntarily made and whether his death sentence was proportionate. Id. at 128-31. For preservation purposes, Altersberger also argued on direct appeal that "(1) the use of hearsay evidence during the penalty phase violates the Confrontation Clause; (2) Florida's death penalty statute violates Ring v. Arizona, 536 U.S. 584 (2002); (3) Florida's death penalty statute and jury instructions unconstitutionally shift the burden of

- 5 -

proof to the defendant to show why death is not the appropriate sentence; (4) the CCP aggravator is unconstitutionally vague and overbroad; (5) victim impact evidence violates defendant's due process rights; and (6) execution by lethal injection is unconstitutional." Id. at 126 n.4. This Court "reject[ed] each of these arguments as contrary to this Court's well established precedent." Id.

Altersberger filed a motion for postconviction relief on November 13, 2013, and filed an amended motion on March 7, 2014, which the trial court denied after holding an evidentiary hearing. Altersberger appeals the trial court's denial and also petitions this Court for a writ of habeas corpus.

## II. POSTCONVICTION MOTION

### A. Ineffective Assistance of Trial Counsel

Altersberger argues that trial counsel was ineffective for failing to adequately advise Altersberger, during the time frame between the entry of his guilty plea and the trial court's sentence of death, about the different legal standard that applies to a motion to withdraw a guilty plea depending on whether the motion is made prior to or after sentencing.[2] However, we affirm the trial court's denial of this claim.

---

2. Altersberger also argues that trial counsel was ineffective during the penalty phase and that there was reversible cumulative error. Because we remand for a new penalty phase, we do not address these claims or the summarily denied claims related to the penalty phase.

Following the United States Supreme Court's decision in Strickland v.

Washington, 466 U.S. 668 (1984), this Court explained that two requirements must

be met for ineffective assistance of counsel claims to be successful:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010) (quoting Maxwell v. Wainwright,

490 So. 2d 927, 932 (Fla. 1986)).

Regarding the deficiency prong of Strickland, there is a strong presumption

that trial counsel's performance was not ineffective. Strickland, 466 U.S. at 689.

Moreover, "[a] fair assessment of attorney performance requires that every effort

be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." Id. The defendant carries the burden to

"overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350

U.S. 91, 101 (1955)).

Regarding the prejudice prong of Strickland, "the defendant must show that

there is a reasonable probability that, 'absent the [deficient performance], the

factfinder would have [had] a reasonable doubt respecting guilt.' " Henry v. State,

948 So. 2d 609, 617 (Fla. 2006) (quoting Strickland, 466 U.S. at 695). "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' " Id. (quoting Strickland, 466 U.S. at 694).

"Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, but reviewing the trial court's legal conclusions de novo." Dennis v. State, 109 So. 3d 680, 690 (Fla. 2012).

Florida Rule of Criminal Procedure 3.170(f) provides the legal standard that applies to motions to withdraw plea agreements made prior to sentencing:

> The court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty or no contest to be withdrawn and, if judgment of conviction has been entered thereon, set aside the judgment and allow a plea of not guilty, or, with the consent of the prosecuting attorney, allow a plea of guilty or no contest of a lesser included offense, or of a lesser degree of the offense charged, to be substituted for the plea of guilty or no contest. The fact that a defendant may have entered a plea of guilty or no contest and later withdrawn the plea may not be used against the defendant in a trial of that cause.

Fla. R. Crim. P. 3.170(f). Under this provision, a trial court has broad discretion in determining motions to withdraw a plea, although it must permit withdrawal upon "good cause." State v. Partlow, 840 So. 2d 1040, 1042 (Fla. 2003).

Rule 3.170(l) provides the standard that applies to motions to withdraw plea agreements made after sentencing:

A defendant who pleads guilty or nolo contendere without expressly reserving the right to appeal a legally dispositive issue may file a motion to withdraw the plea within thirty days after rendition of the sentence, but only upon the grounds specified in Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(a)-(e) except as provided by law.

Fla. R. Crim. P. 3.170(l). According to this Court's case law, pursuant to rule 3.170(l), once a sentence has been imposed, a defendant must demonstrate manifest injustice or prejudice in order to withdraw a guilty plea. Campbell v. State, 125 So. 3d 733, 736 (Fla. 2013); Partlow, 840 So. 2d at 1042. "[A] court does not enjoy broad discretion as to motions filed after sentencing." Griffin v. State, 114 So. 3d 890, 898 (Fla. 2013).

In this case, Altersberger has not demonstrated deficiency. Regarding Altersberger's plea and including the time period between the entry of his guilty plea and the trial court's sentence of death, trial counsel discussed with Altersberger "the importance of prevailing at the penalty phase and had explained to him that entering a plea would be a good strategic decision." Altersberger, 103 So. 3d at 128. The decision to enter a guilty plea was a difficult decision for Altersberger to make, and it took him a while to make the decision to enter a plea. However, as this Court noted on direct appeal, the decision to enter the plea was ultimately made by Altersberger, it was "knowingly, intelligently, and voluntarily made," Altersberger was not forced or coerced into entering his plea, and he was not promised anything in return for his plea. Id. at 130.

- 9 -

This Court also noted that the trial court, after holding a <u>Nelson</u>[3] hearing on March 11, 2009, denied Altersberger's motion to discharge his attorneys on the grounds that they were improperly attempting to force him to plead guilty "because there was nothing presented to indicate that counsel was ineffective or had performed incompetently." <u>Id.</u> at 129. After entering the plea on March 13, 2009, and "a lengthy plea colloquy," the judge inquired even further, and "Altersberger told the judge that he had been fully advised by his attorneys that pleading guilty would be in his best interest." <u>Id.</u> at 129-30.

One of Altersberger's trial counsels, Deb Goins, testified at the evidentiary hearing that, to her knowledge, they did not talk to Altersberger about the specific subtleties between filing a motion to withdraw a plea prior to sentencing versus filing a motion to withdraw a plea after sentencing. And trial counsel Peter Mills testified at the evidentiary hearing that he "probably covered the issues with him generally," but did not get into specifics. Nevertheless, trial counsel's advice to Altersberger that it was better to wait until after sentencing to move to withdraw his plea was reasonable trial strategy. <u>See</u> <u>Occhicone v. State</u>, 768 So. 2d 1037, 1048 (Fla. 2000) ("[S]trategic decisions do not constitute ineffective assistance of

---

3. <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

counsel if alternative courses have been considered and rejected and counsel's

decision was reasonable under the norms of professional conduct.").

Specifically, trial counsel was weighing the decision to wait until after

sentencing to withdraw the plea so that their deal with the State to keep out

damaging testimony from the penalty phase would not be impacted against filing

the motion to withdraw the plea before sentencing where a different standard

would apply. As this Court discussed on direct appeal:

> Altersberger's attorneys testified that they knew the prosecution
> had as many as twenty witnesses who could provide highly damaging
> testimony as to Altersberger's acts and admissions following the
> shooting and that this testimony would make obtaining a life sentence
> extremely difficult. They believed, therefore, that the best trial
> strategy was to agree with the prosecution that Altersberger would
> plead guilty in return for the prosecution not calling those witnesses at
> the penalty phase. They also explained that when Altersberger asked
> them what his odds of getting a life sentence would be, they told him
> that they could not guarantee anything, but his chances would greatly
> improve if he were to enter a plea so as to limit the prosecution's
> introduction of evidence at the penalty phase. As to his desire to
> withdraw his plea prior to sentencing, Altersberger's attorneys
> testified that they explained Altersberger's rights regarding plea
> withdrawal and advised him against withdrawing the plea but would
> have filed the motion to withdraw the plea if they had been directed to
> do so.

Altersberger, 103 So. 3d at 129. And in denying Altersberger's motion to

withdraw his plea that was filed after sentencing, the trial court explained that,

based on the testimony given by Altersberger and his attorneys, "[i]t is clear that

the [d]efendant in agreement with his attorneys made a tactical decision that it was

- 11 -

in his best interest in the hopes of obtaining a life sentence to enter a plea of guilty and proceed directly to the penalty phase." Id. at 130.

Additionally, Altersberger has not demonstrated prejudice from trial counsel's decision to advise Altersberger to move to withdraw the plea after sentencing rather than before sentencing and from failing to specifically explain the different standards. After holding a hearing, Altersberger's motion to withdraw his plea, which was filed after sentencing, was denied. The trial court in this case actually did review Altersberger's plea and the circumstances surrounding his plea before sentencing when Altersberger filed a motion to discharge his attorneys on the grounds that they were improperly attempting to force him to plead guilty. And, at the hearing on this motion, Altersberger also complained about his attorney's advice regarding the plea. Altersberger cannot show that the trial court would have granted a presentence motion to withdraw his plea. Moreover, as this Court's review of Altersberger's plea on direct appeal demonstrates, Altersberger would not have been able to offer proof that his plea was not knowing, intelligent, and voluntary. See id. at 128-30. Accordingly, Altersberger has failed to demonstrate how he was prejudiced by trial counsel's advice or lack of advice regarding when to file the motion to withdraw his plea.

Therefore, because Altersberger has failed to establish deficiency and prejudice, we affirm the trial court's denial of relief.

## B. Hurst

Next, we consider whether Altersberger is entitled to relief after the United States Supreme Court issued its decision in Hurst v. Florida, 136 S. Ct. 616 (2016). Because the jury recommended the death penalty by a vote of nine to three, we conclude that Altersberger's death sentence violates Hurst. See Kopsho v. State, 209 So. 3d 568, 570 (Fla. 2017). We must then consider whether the Hurst error was harmless beyond a reasonable doubt:

> The harmless error test, as set forth in Chapman[v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

Hurst v. State, 202 So. 3d 40, 68 (Fla. 2016) (quoting State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)), petition for cert. filed, No. 16-998 (U.S. Feb. 16, 2017).

Because the jury in this case recommended death by a vote of nine to three, "we cannot determine that the jury unanimously found that the aggravators outweighed the mitigation." Kopsho, 209 So. 3d at 570. "We can only determine that the jury did not unanimously recommend a sentence of death." Id. Therefore, because we cannot say that there is no possibility that the error did not contribute to the sentence, the error in Altersberger's sentencing was not harmless beyond a reasonable doubt.

- 13 -

Accordingly, we vacate the death sentence and remand for a new penalty phase.  See Hurst, 202 So. 3d at 69.

### III.  HABEAS PETITION

Altersberger argues that appellate counsel was ineffective for failing to raise a claim on direct appeal regarding the voluntariness of Altersberger's guilty plea.[4] In this case, because the conviction for which the death penalty was imposed was the result of Altersberger's guilty plea, "this Court's [mandatory] review shifts to the knowing, intelligent, and voluntary nature of that plea."  Barnes v. State, 29 So. 3d 1010, 1020 (Fla. 2010) (quoting Tanzi v. State, 964 So. 2d 106, 121 (Fla. 2007)).  This Court held on direct appeal that "Altersberger's plea was knowingly, intelligently, and voluntarily entered."  Altersberger, 103 So. 3d at 130.  Because this Court actually reviewed this claim on direct appeal, we deny relief.  See Wheeler v. State, 124 So. 3d 865, 889 (Fla. 2013) (denying habeas relief for claim that appellate counsel were ineffective for failing to make more specific claims regarding victim impact photographs because this Court already reviewed the photographs on direct appeal); Messer v. State, 439 So. 2d 875, 879 (Fla. 1983) ("Habeas corpus is not a vehicle for obtaining a second determination of matters previously decided on appeal.").

---

    4.  Because we remand for a new penalty phase, we do not specifically address the penalty phase claim Altersberger raised in his habeas petition.

# IV. CONCLUSION

For the foregoing reasons, we affirm the denial of Altersberger's postconviction guilt phase claims, deny his guilt phase habeas claim, vacate his death sentence, and remand for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur. POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision except its vacating of the death sentence pursuant to Hurst.

CANADY and LAWSON, JJ., concur.

An Appeal from the Circuit Court in and for Highlands County,
    Angela Jane Cowden, Judge - Case No. 282007CF000041XXAXMX
And an Original Proceeding – Habeas Corpus

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, and Julie A. Morley and Mark S. Gruber, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and C. Suzanne Bechard, Assistant Attorney General, Tampa, Florida,

    for Appellee/Respondent